MERITOR AUTOMOTIVE, INC. f/k/a Rockwell International Corporation d/b/a Rockwell International Plastic Products, Petitioner,

v.

RUAN LEASING COMPANY, Respondent.

No. 99–1291.

Supreme Court of Texas.

Argued Oct. 3, 2000.

Decided March 29, 2001.

Renee Forinash-McElhaney, John W. Weber, W. Wendell Hall, Fulbright & Jaworski, San Antonio, John G. Sams, Dan K. Horn, Cathryn Ruth Paton, Maloney, Bean & Horn, P.C., Irving, for petitioner.

Luke Ashley, Thompson & Knight, Dallas, for respondent.

Chief Justice PHILLIPS delivered the opinion of the Court.

The Texas Products Liability Act provides, among other things, that the manufacturer of an allegedly defective product must indemnify the seller for any loss arising out of a products liability action except when the seller independently causes the loss. TEX.CIV.PRAC. & REM.CODE § 82.002(a). The Act defines "loss" broadly to include not only damages, but also the innocent seller's reasonable attorney's fees and other defense costs. *Id.* § 82.002(b). Here, we must decide whether the seller's reasonable cost to defend an unsuccessful negligence claim, asserted independently of the products liability claim, is properly included as part of the "loss arising out of a products liability action," so that it is within the manufacturer's indemnity duty. *Id.* § 82.002(a). Because we hold that it is, we affirm the judgment of the court of appeals. 6 S.W.3d 726.

I

Truck driver Paul Hampton was injured while attempting to open the hood of his leased Freightliner. As the truck was designed, Hampton had to stand on the front bumper and pull a handle to open the hood. As he pulled the handle, it broke free, and Hampton fell. Hampton filed a products liability claim against Freightliner Corp., the truck manufacturer, and Meritor Automotive, Inc., the hood manufacturer [the "Manufacturers"]. He also joined the truck's owner, Ruan Leasing Company, which had leased the truck to Hampton's employer. The Manufacturers agreed to defend their product, and Ruan tendered its defense to them. Months later, Hampton amended his petition to add an allegation that Ruan was independently negligent in failing to maintain the hood. This allegation created a conflict of interest between Ruan and the Manufacturers, causing Ruan to hire its own attorney to defend against the negligence claim. Ruan then filed a cross-claim against the Manufacturers, seeking indemnification for all damages and expenses.

On the eve of trial, Hampton settled with both manufacturers, and the trial court signed an agreed judgment dismissing Hampton's claims against Freightliner and Meritor. The trial court severed that judgment from this cause. After Hampton nonsuited his claims against Ruan, only Ruan's indemnity claim against the Manufacturers remained in controversy. Both sides moved for summary judgment on this claim. The Manufacturers urged that the Act did not obligate them to pay for Ruan's negligence defense because the negligence claim was not a part of the products liability action. Ruan responded that the negligence claim against it was and remained a part of the products liability action because the negligence claim was never established to be a cause of the plaintiff's injury. Ruan further asserted that it was entitled to summary judgment because the evidence conclusively established that it was not negligent and that its defense costs were reasonable. While the Manufacturers did not contend otherwise, they argued that the Act was not intended to indemnify the seller for its costs in defeating a claim that it was independently

negligent. The trial court denied the Manufacturers' motion and granted Ruan's. The summary judgment reimbursed Ruan for attorney's fees and expenses in defending itself against Hampton and in enforcing its indemnity rights against the Manufacturers. The court of appeals affirmed. We granted the Manufacturers' petitions for review to consider the scope of the Manufacturers' statutory indemnity obligation.

## II

■ The Texas Products Liability Act describes the manufacturer's indemnity duty as follows:

A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

TEX.CIV.PRAC. & REM.CODE § 82.002(a). This section requires a manufacturer to indemnify an innocent seller for certain damages and litigation expenses arising out of a products liability action, but requires sellers to bear the damages and expenses for losses they cause. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 867 (Tex.1999).

Ruan argues that it qualifies for indemnity under this provision because all the allegations against it—both the products liability claim and the subsequently added negligence claim—were unfounded. Ruan accordingly maintains that it is an innocent seller and that the attorney's fees and expenses it incurred are the type of losses that the Act intends for the manufacturer to reimburse. TEX.CIV.PRAC. & REM.CODE § 82.002(b).

The Manufacturers maintain, however, that they are not required to reimburse

Ruan's litigation expenses in defending itself against allegations of its own negligence because such expenses do not "[arise] out of a products liability action." *Id.* § 82.002(a). To support their contention, the Manufacturers rely on the Act's definition of this term:

"Products liability action" means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

*Id.* § 82.001(2). Because the negligence claim against Ruan did not seek damages "allegedly caused by a defective product," that is, a product unreasonably dangerous because of a defect in marketing, design, or manufacturing, *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex.1995), the Manufacturers conclude that it was not a part of the products liability action.

Ruan, on the other hand, submits that the Manufacturers have defined a products liability *claim*, not a products liability *action* as used in the statute. Ruan argues that the word "action" does not refer to a specific claim or legal theory but to an entire lawsuit. In support, Ruan directs us to an authority who states that in modern usage, "the terms *action* and *suit* are interchangeable." BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 20 (2nd ed.1995). Because the Act defines a "products liability action" as any action in which a plaintiff alleges that a defective product caused injury, regardless of the "theory or combination of theories" underlying the plaintiff's action, TEX.CIV.PRAC. & REM.CODE § 82.001(2), Ruan urges that a "products liability action" includes all

claims properly joined as part of the products lawsuit.

The court of appeals agreed, holding that the statutory definition included direct claims against the seller, such as Hampton's negligence claim against Ruan. 6 S.W.3d at 731. The court further viewed our recent opinion in *Fitzgerald v. Advanced Spine Fixation Systems, Inc.*, 996 S.W.2d 864 (Tex.1999) as compelling a presumption of indemnity to the seller. 6 S.W.3d at 730. That presumption could be overcome, it reasoned, only by proof that the seller was independently liable for the plaintiff's injury. *Id.* The court thus concluded that the statute required indemnification "unless it is *proven*, not merely alleged, that seller's conduct caused the loss." 6 S.W.3d at 732.

The Manufacturers complain that while the court of appeals purports to apply *Fitzgerald*, its decision is actually contrary to that case. In *Fitzgerald*, we concluded that pleadings joining a seller as defendant in a products liability action were sufficient to invoke the manufacturer's indemnity duty under the Act. *Fitzgerald*, 996 S.W.2d at 867. It did not matter when later it was established that this particular defendant seller had not actually sold the injury-causing product. *Id.* at 869. The manufacturer remained obligated to indemnify the innocent seller. The Manufacturers complain that the court of appeals' requirement that they prove the seller's negligence to avoid indemnity is inconsistent with *Fitzgerald*'s notion that pleadings, rather than proof, should control. Just as the indemnity duty in *Fitzgerald* was invoked by the plaintiff's allegations, the Manufacturers argue, the exception to that duty should be based upon allegations, not on facts proven after an expensive trial.

Even though both parties rely heavily on *Fitzgerald*, that decision does not control the present case. *Fitzgerald* construed the statutory term "seller," while here we must decide what "products liability action" means and when the exception to the statutory indemnity duty applies. These questions did not arise in *Fitzgerald* because there were no independent allegations against the seller. The issues before us are therefore ones of first impression. We must look for the answer in the Act's language, particularly section 82.001(2), defining products liability action, and sections 82.002(a) & (e), defining the manufacturer's duty to indemnify. We turn to these provisions to determine the scope of the duty created by the Legislature in this statute.

### III

When construing statutes, our ultimate purpose is to discover the Legislature's intent. *Fitzgerald*, 996 S.W.2d at 865; *Texas Water Comm'n v. Brushy Creek Mun. Util. Dist.*, 917 S.W.2d 19, 21 (Tex.1996). In determining that intent, the Legislature has instructed that we may consider, among other things, the object sought to be obtained, the circumstances under which the statute was enacted, legislative history, and the consequences of a particular construction. *See* Code Construction Act, Tex.Gov't Code § 311.023; *see also Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 350 (Tex. 2000). We begin, however, with the words the Legislature used. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex.1999). "If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms." *Fitzgerald*, 996 S.W.2d at 865.

Standing alone, however, the statutory definition of products liability action could plausibly be construed to support either party's position. Indeed, one court of appeals has recently concluded that a

seller may recover attorney's fees and costs associated with defending the products claim but not those costs associated with defending allegations of its own negligence in the products lawsuit. *Hurst v. American Racing Equip., Inc.*, 981 S.W.2d 458, 463 (Tex.App.—Texarkana 1998, no pet.); *see also E.I. Du Pont De Nemours & Co. v. Bee Agric. Co.*, 24 S.W.3d 522, 524 (Tex .App.—Corpus Christi 2000, pet. pending) (recognizing conflict between *Hurst* and the decision below). The Act's definition of products liability action does not reveal which view most accurately represents the Legislature's intent.

 In determining legislative intent, however, we do not confine our review to words, phrases or clauses in isolation, but rather we examine the entire act to glean its meaning. *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex.1998). We further presume that "the entire statute is intended to be effective." Tex.Gov't Code § 311.021(2). When possible, each sentence, phrase, clause and word is given effect, so that the statute makes sense as a cohesive whole. *See Clint Independent School Dist. v. Cash Invs., Inc.*, 970 S.W.2d 535, 539 (Tex.1998) ("[c]ourts should not assign a meaning to a provision that would be inconsistent with other provisions of the act."); *Hammond v. City of Dallas*, 712 S.W.2d 496, 498 (Tex.1986) (city charter examined as a harmonious whole rather than in isolated pieces). When the definition of products liability action is considered in the context of the entire Act, its meaning becomes clearer.

Section 82.002(a) explains what is and is not part of a "products liability action." It provides that a manufacturer must indemnify "a seller against loss arising out of a products liability action, except for any loss caused by ... [and] for which the seller is independently liable." Tex.Civ. Prac. & Rem.Code § 82.002(a). These words suggest that we are to include all direct allegations against the seller that relate to plaintiff's injury as part of the "products liability action" and that we exclude only those losses "caused by" the seller. As the court of appeals reasoned below, if "a plaintiff's claim of seller's negligence were not a part of the products liability action, then there would be no need for the exception in section 82.002(a)." 6 S.W.3d at 731. We agree, and we disapprove that language in *Hurst v. American Racing Equipment, Inc.* to the contrary. *Hurst*, 981 S.W.2d at 463.

 The Manufacturers argue that even if the negligence claim against Ruan is properly considered as part of the products liability action, we should nevertheless read the exception as invoked upon plaintiff's allegation of a direct claim against the seller. We disagree. In using the phrase "caused by," rather than "allegedly caused by," the Legislature indicated that a mere allegation that the seller was negligent would not suffice to invoke the exception. *See* Tex.Civ.Prac. & Rem.Code § 82.002(a). By way of contrast, in the very same statute the Legislature defined a "products liability action" as any action in which the claimant seeks damages for injury *"allegedly caused by "* a defective product. *Id.* § 82.001(2)(emphasis added). Ordinarily when the Legislature has used a term in one section of a statute and excluded it in another, we will not imply the term where it has been excluded. *See Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex.1980) (where proof of intent was required by some sections of the DTPA but not by others, intent would not be implied where excluded).

Finally, the Manufacturers argue that requiring them to prove Ruan's negligence to avoid their indemnity obligation creates an internal conflict with section 82.002(e)(1). That section states that the

manufacturer's "duty to indemnify ... applies without regard to the manner in which the action is concluded." TEX.CIV. PRAC. & REM.CODE § 82.002(e)(1). We relied on this section in *Fitzgerald* when concluding that the manufacturer's indemnity duty should be invoked by pleadings rather than proof. *Fitzgerald*, 996 S.W.2d at 867. The Manufacturers again suggest that it is inconsistent for the allegations in the pleadings to control when a seller seeks to establish a manufacturer's indemnity duty, but not to do so when a manufacturer seeks to establish that it owes no such duty. If, as in *Fitzgerald*, a seller who did not actually sell the product can establish the manufacturer's duty to indemnify through the plaintiff's allegations, the Manufacturers submit that in fairness the statute must permit them to establish the exception to such duty through the plaintiff's pleadings as well.

Whether or not the Manufacturers' position is fair, it is simply not what the statute provides. In describing the manufacturer's duty, section 82.002(a) provides that the manufacturer must indemnify the seller except when the loss is "caused by the seller's negligence [or other independent culpable conduct]." Section 82.002(e)(1) then further elaborates on the manufacturer's duty to indemnify, stating that it "applies without regard to the manner in which the action is concluded." Thus, under (e)(1), it is the manufacturer's "duty to indemnify" that applies regardless of outcome, and plaintiff's pleadings are accordingly sufficient to invoke that duty. But for the Manufacturers to implicate section 82.002(a)'s exception to that duty, it must be established that seller's conduct "caused" the loss. In this instance, the statute's plain language indicates that the plaintiff's pleadings are not sufficient to invoke the exception.

Legislative history further confirms that the exception applies only upon a finding that the seller was independently liable. The Senate Bill Analysis explains that the Act's purpose was to "expand the indemnity rights sellers now have by requiring manufacturers to indemnify them, regardless of the outcome of the suit, for all losses from a products liability suit where the seller was not at fault." SENATE COMM. ON ECONOMIC DEVELOPMENT, BILL ANALYSIS, Tex. S.B. 4, 73rd Leg., R.S. at 2 (1993). The House Bill Analysis likewise confirms that the Act requires manufacturers to indemnify sellers for all costs incurred in a products liability action "as long as the seller was not negligent or otherwise at fault." HOUSE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. S.B. 4, 73rd leg., R.S. at 3 (1993). This analysis goes on to explain that under the exception, "Retailers would still be held responsible if they were truly negligent, engaged in intentional misconduct or altered a product." *Id.* at 5.

In sum, a "products liability action" includes not only products liability claims but also other theories of liability properly joined thereto, such as the allegation of negligence in this case. And while the manufacturer's duty to indemnify the seller is invoked by the plaintiff's pleadings and joinder of the seller as defendant, the exception to that duty is established by a finding that the seller's independent conduct was a cause of the plaintiff's injury. Because in this summary judgment appeal the Manufacturers have not raised a fact issue that Ruan was negligent or that its defense costs were unreasonable, we affirm the court of appeals' judgment.

HANKINSON, J., did not participate.