SEELIN MEDICAL, INC., Appellant,

v.

INVACARE CORPORATION, Appellee.

No. 11–05–00116–CV.

Court of Appeals of Texas,
Eastland.

Aug. 31, 2006.

Opinion Overruling Rehearing
Sept. 28, 2006.

Nathan M. Rymer, Debra I. Mayfield, Rymer, Moore, Jackson & Echols, P.C., Houston, for appellant.

Steven L. Hughes, Carl Green, Mounce, Green, Myers, Safi & Galatzan, El Paso, for appellee.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

This is an indemnity dispute between codefendants in a products liability action. Seelin Medical, Inc. filed a cross-claim against Invacare Corporation contending that Seelin had been sued in a products liability action, that it was an innocent seller, and that it was entitled to indemnity from Invacare, the product's manufacturer, pursuant to Chapter 82 of the Civil Practice and Remedies Code.[1] The trial court granted Invacare's motion for summary judgment finding that it had no duty to indemnify Seelin. We affirm in part and reverse and remand in part.

### Background Facts

Reynaldo Baeza sued Seelin, Invacare, and Graham–Field, Inc. alleging strict products liability and negligence actions for injuries he sustained when his walker collapsed.[2] Baeza contended that the walker and a platform attached to the walker were unreasonably defective. Invacare manufactured and distributed the walker. Graham–Field manufactured and distributed the platform. Seelin sold the walker and attachment to Baeza.

Invacare filed a no-evidence motion for summary judgment against Baeza. During the pendency of that motion, Seelin filed a cross-claim against Invacare asserting a statutory right of indemnity pursuant to Section 82.002. Invacare's no-evidence motion was granted without prejudice as to Seelin's cross-claim. Baeza then filed a third amended petition. This petition asserted no claim against Invacare, nor did it allege that the walker was defective. Instead, Baeza alleged only that the platform assembly was defective. He asserted claims against Graham–Field as the manufacturer and Seelin as the seller.

Invacare challenged Seelin's cross-claim with both a traditional and a no-evidence motion for summary judgment. The trial court held a hearing and subsequently entered an order granting Invacare's motion for summary judgment without specifying which motion was being granted.

### Issues

Seelin challenges the trial court's ruling with two issues. In the first issue, Seelin assumes that the trial court granted Invacare's traditional motion for summary judgment. In the second issue, Seelin assumes that the trial court granted Invacare's no-evidence motion. Seelin asserts

---

1. TEX. CIV. PRAC. & REM.CODE ANN. §§ 82.001–.008 (Vernon 2005).

2. Graham–Field is in bankruptcy and is not a party to this appeal.

in each issue that the trial court's ruling was in error.

### Standard of Review

Traditional motions are governed by TEX.R. CIV. P. 166a(c) which provides that a summary judgment shall be rendered if the evidence properly before the court indicates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." When a defendant files a traditional motion for summary judgment, it must either conclusively negate at least one of the essential elements of a plaintiff's cause of action or conclusively establish each element of an affirmative defense. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). If a defendant negates an element of a plaintiff's claim, the burden shifts to the plaintiff who must produce evidence creating a genuine issue of material fact on that disputed element. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995).

The trial court must assume that all evidence favorable to the nonmovant is true and must view the evidence in the light most favorable to the nonmovant. *Specialty Retailers, Inc. v. DeMoranville,* 933 S.W.2d 490, 491 (Tex.1996). The trial court must indulge every reasonable inference and resolve all doubts in favor of the nonmovant. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). We review the trial court's decision as a question of law and, therefore, utilize a de novo review applying the same presumptions as are applicable to the trial court. *Eslon Thermoplastics v. Dynamic Sys., Inc.,* 49 S.W.3d 891, 896 (Tex.App.-Austin 2001, no pet.).

No-evidence motions are governed by TEX.R. CIV. P. 166a(i). The party without the burden of proof may file a no-evidence motion after an adequate time for discovery has passed. The movant asks for summary judgment on the ground that the nonmoving party lacks supporting evidence for one or more essential elements of its claim. *Id.* The trial court must sustain the motion unless the nonmovant produces sufficient evidence to create a genuine issue of material fact. *Id.*

A no-evidence motion for summary judgment is essentially a directed verdict granted before trial to which we apply a legal sufficiency standard of review. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750–51 (Tex.2003). A no-evidence summary judgment will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the trial court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch,* 118 S.W.3d at 751.

### What Indemnity Obligation Does Section 82.002 Impose?

Texas common law recognized a limited right of indemnity for innocent retailers from manufacturers. *See, e.g., Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 819 (Tex.1984). This right placed an onerous burden on sellers who were required to bring a separate action against the manufacturer. *Freightliner Corp. v. Ruan Leasing Co.,* 6 S.W.3d 726, 729 (Tex.App.-Austin 1999), *aff'd sub nom., Meritor Auto., Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86 (Tex.2001). The seller was required to show that it sold the product, that the manufacturer was found liable or admitted its liability to the underlying plaintiff, and that the seller had been forced to pay damages. *Humana Hosp. Corp. v. Am. Med. Sys., Inc.,* 785 S.W.2d 144 (Tex.1990).

■ The legislature significantly enhanced a seller's indemnity rights when it adopted the Texas Products Liability Act in 1993. Codified as Chapter 82 of the Civil Practice and Remedies Code, this statute imposes a duty upon manufacturers to indemnify sellers in relevant part as follows:

> (a) A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

> (b) For purposes of this section, "loss" includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages.

> (e) The duty to indemnify under this section:

>> (1) applies without regard to the manner in which the action is concluded; and

>> (2) is in addition to any duty to indemnify established by law, contract, or otherwise.

Section 82.002. The purpose of this section, according to the supreme court, is to require a manufacturer to indemnify an innocent seller for certain damages and litigation expenses arising out of a products liability action and to require sellers to bear the damages and expenses for the losses they cause. *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 262 (Tex., 2006); *Meritor Auto.*, 44 S.W.3d at 88.

The supreme court's application of this statute to issues arising during the pendency of a products liability lawsuit is not unlike the eight-corners rule used to determine an insurer's duty to defend.[3] In both instances, extrinsic evidence may not be considered. Instead, the court has compared the allegations in a products liability claimant's pleadings with the language of Section 82.002 and has found a duty to indemnify exists if a claimant asserts an allegation against a seller that falls within the statute's scope. For example, in *Fitzgerald v. Advanced Spine Fixation Systems, Inc.*, 996 S.W.2d 864, 867–69 (Tex. 1999), the court held that pleadings joining a seller as a defendant in a products liability action were sufficient to invoke the manufacturer's duty to indemnify even though it was ultimately determined that the defendant seller did not sell the injury-causing product.[4] *See also Freeman Fin. Inv. Co. v. Toyota Motor Corp.*, 109 S.W.3d 29, 34 (Tex.App.-Dallas 2003, pet. denied) (manufacturer's summary judgment proof that the defendant retailer did not sell the injury-causing product did not relieve the manufacturer of its duty to indemnify because the duty was triggered by the claimant's pleading and the claimant continued to allege that the retailer was the seller and to assert a strict products liability action against it).

When the trial court considered Invacare's motions for summary judgment against Seelin, Baeza's live pleading was his fourth amended petition. Invacare argued that, because this petition asserted no claim against it nor otherwise claimed that any product it manufactured was defective, Section 82.002 was inapplicable.

---

**3.** For a description of the eight-corners rule, see *Burlington Ins. Co. v. Texas Krishnas, Inc.*, 143 S.W.3d 226, 229 (Tex.App.-Eastland 2004, no pet.).

**4.** *Cf. American Alliance Ins. Co. v. Frito–Lay, Inc.*, 788 S.W.2d 152, 154 (Tex.App.-Dallas 1990, writ dism'd) ("The duty to defend is not affected by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit.").

Seelin responded that, because Baeza's original petition alleged that Invacare's walker was defective and because Seelin had been sued as a seller of the walker, Section 82.002 was applicable and that it was entitled to indemnity.

Neither party asks us to consider extrinsic evidence. Instead, both contend that the issue is resolved solely by looking at Baeza's petitions. They differ in their analysis of which petition we should consider and the effect of a subsequently amended petition. Invacare would have us hold that, if a claimant abandons a products liability claim against the manufacturer, the manufacturer's duty to indemnify is retroactively eliminated. Seelin contends that, if a products liability claimant ever asserts a claim covered by Section 82.002, then the manufacturer must indemnify the seller so long as it remains a party.

*A. Does Invacare Have Any Obligation to Seelin?*

■ Invacare cites us no authority for its argument that, when Baeza abandoned his claim that Invacare's walker was defective, Invacare was retroactively relieved of any duty to indemnify Seelin. Invacare focuses instead on the lack of any complaint against it in Baeza's third and fourth amended petitions and, in essence, asks us to consider subsequent developments during the course of the litigation to determine whether Invacare ever owed Seelin a duty. The supreme court's analysis in *Fitzgerald,* 996 S.W.2d at 864, and *Meritor Automotive,* 44 S.W.3d at 86, is inconsistent with this position. Those decisions stand for the proposition that the only subsequent development which would have retroactive effect is a finding of independent conduct by the seller which caused the claimant's injury. *See* 44 S.W.3d at 91.

When Baeza originally filed suit, he alleged that Invacare's walker was defective. He sued Seelin as the seller and asserted products liability causes of action against it. These allegations are sufficient to trigger Invacare's duty to indemnify. To the extent the trial court found Invacare had no duty, it erred and Seelin's first and second issues are sustained.[5]

*B. Is Invacare's Duty To Indemnify Unlimited?*

■ Seelin contends that, because Invacare's duty to defend was triggered by Baeza's original petition, subsequent petitions are irrelevant. Seelin's argument turns on the provision in Section 82.002(e)(1) that the duty to indemnify "applies without regard to the manner in which the action is concluded." Seelin contends that, in light of this language, any holding which limits a manufacturer's duty because of subsequently amended pleadings would require the court to engraft language into the statute. Seelin misreads Section 82.002(e)(1). This provision does not make subsequent changes in the claimant's allegations irrelevant—it eliminates the common law requirement that the seller prove the manufacturer's liability to the underlying plaintiff. Under the common law, a seller's right to indemnity from the manufacturer is dependent upon a finding of liability. *See Humana Hosp.,* 785 S.W.2d at 144. Under Section 82.002, however, indemnity is dependent solely upon the presence of a statutorily covered claim.

■ Chapter 82 requires manufacturers to indemnify retailers when they are sued for selling the manufacturer's allegedly de-

---

5. This holding makes it unnecessary for us to distinguish between Invacare's no-evidence and traditional motions.

fective product. It does not require them to indemnify retailers who are sued for selling the allegedly defective products of others. *Hudiburg*, 199 S.W.3d at 262. Section 82.001(2) defines a "[p]roducts liability action" as:

> [A]ny action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

Section 82.001(4) defines a "[m]anufacturer" as:

> [A] person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce.

These two definitions, when read together, require some nexus between the manufacturer and the allegedly defective product.

Baeza originally claimed that his walker and the attached platform were defective. We have previously held that these allegations triggered Invacare's duty to indemnify Seelin. But when the trial court considered Invacare's motions for summary judgment against Seelin, Baeza had abandoned his claim that the walker was defective and contended only that the platform was defective. He alleged that Graham–Field manufactured the platform and that Seelin sold it. His products liability and negligence claims against Seelin alleged only a breach of duty in connection with the platform assembly. Baeza made no claim that Invacare's walker—or anything else manufactured by Invacare—was defective. Finally, Seelin produced no summary judgment evidence establishing that its continued, as opposed to original, presence in Baeza's litigation was attributable in any way to Invacare.

Seelin's position strains the language of the statute. Seelin would require Invacare to indemnify it for claims that the platform assembly—which no person contended Invacare designed, formulated, constructed, rebuilt, fabricated, produced, compounded, processed, or assembled—was defective. The plain language of the statute does not support such an interpretation. The trial court correctly found that Invacare owed no duty to indemnify Seelin for the claims in Baeza's third and fourth amended petition. Seelin's issues are overruled to the extent they challenge this ruling.

### Conclusion

Invacare owed Seelin a duty to indemnify it for defending claims relating to the walker. That duty ended when Baeza was no longer asserting such a claim. Even though the trial court had granted the motion for summary judgment on the claim against Invacare, Baeza had not given up on the claim until he amended his lawsuit and deleted the claim against Invacare. He continued to be in a position to assert that claim in a motion to reconsider the ruling on the motion for summary judgment; he could have contested the ruling on the motion for summary judgment on appeal; or he could otherwise have attacked the ruling. We hold that Invacare's duty to indemnify Seelin for defending the claims pertaining to Invacare and the defective walker ended when Baeza amended his petition and omitted Invacare and his claims against it.

The trial court's judgment is affirmed except for that part of the judgment which finds that Invacare owed no duty to indemnify Seelin for its costs in defending claims pertaining to Invacare prior to the time

that Baeza amended his petition and eliminated claims against Invacare. That part of the judgment is reversed and remanded to the trial court for a determination of the amount of that indemnity.

## OPINION ON MOTION
## FOR REHEARING

Seelin Medical, Inc. has filed a motion for rehearing asking this court to withdraw and modify our opinion and judgment dated August 31, 2006. Seelin's motion identifies no error in our opinion or judgment and is, therefore, overruled.

■ Seelin's prayer asks in the alternative that we direct the trial court to consider the costs prior to the filing of plaintiff's third amended petition as well as the costs, fees, and damages incurred by Seelin in prosecution of the indemnity obligation against Invacare. That request raises an issue not properly before us. The trial court's summary judgment held that Invacare owed Seelin no duty. We have previously held that this was partially incorrect because Invacare did owe a duty to Seelin to indemnify it for claims relating to the walker. Because the trial court has not yet been afforded an opportunity to quantify the extent of this duty and because this requires the resolution of factual issues, it would be improper for us to grant Seelin's alternative request. The motion is, therefore, overruled.