IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 06-0322
════════════
 
Owens & Minor, Inc. and 
Owens & Minor Medical, Inc., Appellants,
 
v.
 
Ansell Healthcare Products, 
Inc. and Becton, Dickinson and Company, Appellees
 
════════════════════════════════════════════════════
On Certified Question from the United 
States
Court of Appeals for the Fifth 
Circuit
════════════════════════════════════════════════════
 
 
Argued October 19, 
2006
 
 
            
Justice O’Neill, joined by 
Justice Medina, Justice Johnson, and Justice Willett, dissenting.
 
 
            
A manufacturer of a product alleged in a pleading to be defective is 
required to indemnify and hold harmless an innocent seller against loss arising 
out of a products liability action, regardless of how the action is concluded. 
Tex. Civ. Prac. & Rem. Code § 
82.002. We have said that the manufacturer’s indemnity duty is invoked not by 
proof but by the plaintiff’s pleadings, Gen. Motors Corp. v. Hudiburg 
Chevrolet, Inc., 199 S.W.3d 249, 252 (Tex. 2006); see Fitzgerald v. 
Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 867 (Tex. 1999), and 
that it encompasses all allegations against the seller that relate to a 
plaintiff’s injury, Meritor Auto., Inc. v. Ruan Leasing Co., 44 S.W.3d 
86, 89 (Tex. 2001). Section 82.002’s clear purpose is to expand the common law 
indemnity rights of innocent sellers like the one here, who merely passed along 
sealed packages from the factory. Yet the Court restricts the statutory 
indemnity obligation to defense costs the seller can link to a particular 
manufacturer’s product. That is an impossible burden in this case, as the 
underlying action was nonsuited without a determination of whose product, if 
any, actually caused injury. As a result, the innocent seller’s inability to 
attribute costs to a particular manufacturer leaves it without recompense, 
defeating the very protection the statute was meant to confer. The statutory 
text and our interpretive caselaw demonstrate that the Legislature intended a 
far broader protection for innocent product suppliers than that which the Court 
affords today. In my view, the statute obligated the manufacturers here to 
indemnify or defend the innocent seller against all claims the plaintiff 
alleged, for which they could then seek contribution from the remaining 
manufacturers. Because the Court holds otherwise, I respectfully dissent.
I. Background
            
Kathy Burden, a dental hygienist, filed a products liability action 
alleging that she developed a latex allergy from defective latex gloves. The 
respondents here were among the more than thirty defendants named in Burden’s 
suit. Owens & Minor, Inc. and Owens & Minor Medical, Inc. (collectively 
“Owens & Minor”) were sued as distributors of latex gloves, and Ansell 
Healthcare Products, Inc. and Becton Dickinson & Co. were sued as 
manufacturers. Owens & Minor sent letters to several of the defendant 
manufacturers, including Ansell and Becton, requesting that they indemnify Owens 
& Minor for all litigation expenses as required under Texas Civil Practice 
and Remedies Code section 82.002. When Ansell responded by offering to defend 
claims related only to its own products, Owens & Minor refused the offer. 
Becton did not respond to Owens & Minor’s letter, relying on its position in 
earlier latex-glove litigation that in future proceedings it would only agree to 
defend Owens & Minor for claims related to its own products. Owens & 
Minor thus retained its own counsel to defend the products liability suit. 
            
The case was removed to federal court and consolidated as part of 
multidistrict latex-glove litigation in Pennsylvania. Owens & Minor brought 
cross-claims for indemnity against several of the manufacturers, including 
Ansell and Becton. The plaintiff, unable to show that Owens & Minor sold any 
of the injury-causing latex gloves, nonsuited her claims against Owens & 
Minor. She subsequently dismissed her case against all the remaining defendants 
for the same or similar reasons. Thus, the products liability suit ended without 
a finding that any party was negligent or that any particular product caused the 
plaintiff’s injuries. Owens & Minor settled its indemnity suit against all 
solvent manufacturers except Ansell and Becton. The federal district court 
granted summary judgment in Ansell’s and Becton’s favor, reasoning that they had 
satisfied section 82.002 by offering to defend their own products. Burden v. 
Johnson & Johnson Med., Inc., 332 F. Supp. 2d 1023, 1029 (S.D. 
Tex. 2004). 
Owens appealed to the Fifth Circuit, which certified the question to us.
II. Common Law Indemnity and Section 82.002
            
Under Texas law, sellers of defective products may 
be held strictly liable for resulting injuries. Uniroyal Goodrich Tire Co. v. 
Martinez, 977 S.W.2d 328, 334–35 (Tex. 
1998) (citing McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787, 788–89 
(Tex. 1967)). 
Sellers are therefore often named as defendants in products liability suits 
regardless of any allegation of wrongdoing. As a result, undisputedly innocent 
sellers frequently must dedicate tremendous resources to defending allegedly 
defective products they did not manufacture or alter but merely passed on to 
consumers. See Jeffrey Nolan Diamant, Comment, Texas Senate 
Bill 4: Product Liability Legislation Analyzed, 31 Hous. L. Rev. 921, 930 (1994). 
            
Under the common law, sellers were only entitled to indemnification from 
the manufacturer for damages if the manufacturer was found to be liable. See 
Humana Hosp. Corp. v. Am. Med. Sys., Inc., 785 S.W.2d 144, 145 (Tex. 1990). 
Indemnification for other litigation expenses was unavailable altogether. See 
Aviation Office of Am., Inc. v. Alexander & Alexander of Tex., Inc., 751 S.W.2d 179, 180 (Tex. 1988). Thus, when 
neither the seller nor the manufacturer was found liable, the seller bore the 
heavy cost of its defense of the product. In addition to the requirement that 
the manufacturer be found liable, a seller’s liability must only have been 
vicarious, B & B Auto Supply, Sand Pit & Trucking Co. v. Cent. 
Freight Lines, Inc., 603 S.W.2d 814, 817 (Tex. 1980), that is, the seller 
must not have been independently liable based on its own conduct, Duncan v. 
Cessna Aircraft Co., 665 S.W.2d 414, 432 (Tex. 1984), and the seller must 
have been in the chain of distribution, id.
            
In 1993, the Legislature sought to remedy the unfairness to innocent 
product sellers by enacting section 82.002 of the Texas Civil Practice and 
Remedies Code. This statute completely changed the common law 
manufacturer-seller indemnification scheme by shifting the burden of the 
seller’s litigation costs onto the manufacturer. See Tex. Civ. Prac. & Rem. Code § 
82.002. Now, when neither the seller nor the manufacturer is found liable, the 
manufacturer must “indemnify and hold harmless” the seller for all of its 
litigation expenses, including attorney’s fees. Id. § 82.002(a), (b). As under 
the common law, the statute explicitly provides that the seller loses its right 
to indemnification if it is found independently liable. Id. § 
82.002(a). However, unlike the common law, the statute requires that the 
manufacturer indemnify the seller for all litigation expenses “without regard to 
the manner in which the action is concluded.” Id. § 82.002(e)(1). We 
recognized in Fitzgerald that section 82.002 is intended to protect both 
sellers and product manufacturers, “[f]irst, [by] ensur[ing] that the relatively 
small seller need not fear litigation involving problems that are really not in 
its control,” and “[s]econd, [by] establish[ing] uniform rules of liability so 
that manufacturers could make informed business decisions and plaintiffs could 
understand their rights.” Fitzgerald, 996 S.W.2d at 868–69. In easing the 
requirements for indemnification, the Legislature “gave preference to sellers 
with no independent liability.” Id. at 869. 
III. Interpreting Section 82.002 
In construing 
a statute, our objective is to determine and give effect to the Legislature’s 
intent. See Nat’l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 
(Tex. 2000). 
We first look to the statute’s language. Tex Gov’t Code § 311.011(a); Allen, 
15 S.W.3d at 527. Indeed, we consider it “a fair assumption that the Legislature 
tries to say what it means, and therefore the words it chooses should be the 
surest guide to legislative intent.” Fitzgerald, 996 S.W.2d at 866. If 
the statute’s language is unambiguous, its plain meaning will prevail. 
McIntyre v. Ramirez, 109 S.W.3d 741, 745 (Tex. 2003). Section 82.002, in its entirety, 
provides: 
 
(a) A 
manufacturer shall indemnify and hold harmless a seller against loss arising out 
of a products liability action, except for any loss caused by the seller’s 
negligence, intentional misconduct, or other act or omission, such as 
negligently modifying or altering the product, for which the seller is 
independently liable. 
 
(b) For 
purposes of this section, “loss” includes court costs and other reasonable 
expenses, reasonable attorney fees, and any reasonable 
damages.       
 
(c) 
Damages awarded by the trier of fact shall, on final judgment, be deemed 
reasonable for purposes of this section.
 
(d) For 
purposes of this section, a wholesale distributor or retail seller who 
completely or partially assembles a product in accordance with the 
manufacturer’s instructions shall be considered a seller. 
 
            
(e) The duty to indemnify under this section:
 
(1) 
applies without regard to the manner in which the action is concluded; and
 
(2) is 
in addition to any duty to indemnify established by law, contract, or 
otherwise.
 
(f) A 
seller eligible for indemnification under this section shall give reasonable 
notice to the manufacturer of a product claimed in a petition or complaint to be 
defective, unless the manufacturer has been served as a party or otherwise has 
actual notice of the action.
 
(g) A 
seller is entitled to recover from the manufacturer court costs and other 
reasonable expenses, reasonable attorney fees, and any reasonable damages 
incurred by the seller to enforce the seller’s right to indemnification under 
this section.
 
 
Tex. Civ. Prac. & Rem. Code § 
82.002. 
            
Section 82.001 defines the term “products liability action” as “any 
action against a manufacturer or seller for recovery of damages arising out of 
personal injury, death, or property damage allegedly caused by a defective 
product whether the action is based in strict tort liability, strict products 
liability, negligence, misrepresentation, breach of express or implied warranty, 
or any other theory or combination of theories.” Id. § 82.001(2). The term 
“seller” is defined as “a person who is engaged in the business of distributing 
or otherwise placing, for any commercial purpose, in the stream of commerce for 
use or consumption a product or any component part thereof.” Id. § 
82.001(3). The statute broadly defines a “manufacturer” as “a person who is a 
designer, formulator, constructor, rebuilder, fabricator, producer, compounder, 
processor, or assembler of any product or any component part thereof and who 
places the product or any component part thereof in the stream of commerce.” 
Id. 
§ 82.001(4). 
            
The statute’s import is straightforward and unmistakable: unless the 
seller is found to be negligent, the manufacturer must “indemnify and hold 
harmless” the seller for any reasonable expenses resulting from products 
liability litigation “without regard to the manner in which the action is 
concluded.” Id. § 82.002(a), (e)(1). The 
extent of the indemnity — sellers are to be indemnified regardless of the 
outcome of the underlying lawsuit — indicates how broadly the Legislature 
intended it to apply. Id. § 82.002(e), (g). The Court’s 
conclusion that a manufacturer must only indemnify a seller for that portion of 
its defense costs related to the manufacturer’s particular product contravenes 
the statute’s language and creates an exception to the indemnity obligation that 
does not exist in the text. 
            
The Court’s holding also undermines the law’s fundamental purpose, 
leaving many innocent sellers exposed to damages and expenses incurred in 
defending a product without recourse. See id. § 82.002(a). Under the 
Court’s construct, a seller might enjoy complete indemnity if every 
manufacturer named in the suit agreed to defend or indemnify for the defense of 
its own product. But many products liability actions, like the one here, involve 
multiple manufacturers, and the litigation is often resolved without a 
determination of whose product reached the plaintiff or caused the injury. After 
today, the innocent seller in such a situation who is unable to attribute its 
costs to a particular manufacturer must shoulder the burden of the cost of 
defending the manufacturer’s products, contrary to the statute’s purpose. 
            
The Court posits that if the Legislature had intended manufacturers to 
bear the burden of determining how the seller’s litigation costs should be 
distributed among the manufacturers, the Legislature would have provided that 
manufacturers, as well as sellers, be indemnified for litigation expenses 
incurred in seeking contribution. ___ S.W.3d at ___, n.4. However, 
indemnification, which is the right provided to the seller in section 82.002, 
and contribution, which may be available to the manufacturers, are two distinct 
concepts with varying purposes; indemnity operates to completely shift the 
burden of loss from one, usually innocent, party to another, while contribution 
involves apportionment of a burden among a class of liable parties. See 6 
Texas Torts 
& Remedies, Contribution & Indemnity § 102.01 (MB) (2007). Here, the 
Legislature intended that the innocent seller be held completely harmless for 
any loss and therefore provided the seller with indemnity and compensation for 
expenses securing that indemnity. Tex. 
Civ. Prac. & Rem. Code § 82.002(a), (g). In contrast, the Legislature 
deliberately burdened the manufacturers with the expense of litigation and made 
no distinction between different manufacturers’ levels of liability. Under the 
statutory scheme, the manufacturers are collectively, not individually, 
responsible for the seller’s losses. Contribution, the only avenue available to 
the manufacturers against each other, is fundamentally about sharing the burden, 
not shifting the burden. Thus, it is logical that the Legislature chose to award 
litigation expenses in the case of indemnity, but not for contribution.
            
The Court bases its conclusion that a manufacturer’s indemnity obligation 
extends only to its own products on section 82.001(4), which defines a 
“manufacturer” as “a person who is a [maker] of any product or any component 
part thereof and who places the product or any component part thereof in the 
stream of commerce.” Id. § 82.001(4) (emphasis added). Under 
the Court’s construct, if the plaintiff in the underlying claim, or the seller 
in the indemnity action, is unable to show that a particular manufacturer’s 
product reached the plaintiff and could have caused the alleged injury, that 
manufacturer has no indemnity obligation under the statute. The Court’s 
construction, however, requires that we read the same phrase in the same section 
differently than we have with respect to sellers. Subsection 82.001(3) defines a 
“seller” as “a person who is engaged in the business of distributing or 
otherwise placing, for any commercial purpose, in the stream of commerce 
for use or consumption a product or any component part thereof.” 
Id. § 
82.001(3) (emphasis added). In Fitzgerald, we held that a seller who did 
not place the particular product alleged to have injured the plaintiff in the 
stream of commerce was nonetheless a “seller” for purposes of section 82.002 and 
was thus entitled to indemnification from the manufacturer. 996 S.W.2d at 867. 
We reasoned that nothing in the statutory text required proof that the seller 
was in the distribution chain of the particular product that caused an injury. 
Id. 
Given that the statute uses the same phrase — “plac[es] [the] product” “in 
the stream of commerce” — to define both manufacturers and sellers, 
Fitzgerald would appear to preclude a chain-of-distribution requirement 
for holding manufacturers to their statutory indemnity obligation. Tex. Civ. Prac. & Rem. Code § 82.001(3), 
(4). 
            
Further, our holding in Fitzgerald undermines the Court’s reliance 
on common law principles instead of the statutory language to require a nexus 
between the manufacturer and the product. In Fitzgerald, we considered 
whether the Legislature intended section 82.002 to supplant all common 
law indemnification requirements, including the chain-of-distribution 
requirement, or only the requirement that the manufacturer be found liable. In 
holding that a seller need not be in the distribution chain for indemnity to 
apply, we recognized the dramatic changes the statute effected and the 
diminished import of the common law in this context:
 
Even if 
the common law were clear on this issue, the manufacturer’s claim that the 
Legislature intended to adopt the common law is not supported by the statute’s 
legislative history and is contradicted by the statute itself. The Legislature 
must have been aware it was creating a new duty, not codifying existing law, 
because the statute says that the duty to indemnify under this section “is in 
addition to any duty to indemnify established by law, contract, or otherwise.” 
Thus, the state of the common law sheds little light on what the Legislature 
intended when it . . . required manufacturers to indemnify sellers in section 
82.002(a). 
 
 
Fitzgerald, 996 S.W.2d at 
868 (emphasis added). Nevertheless, the Court invokes the common law to conclude 
that the statute requires a nexus between the manufacturer and the product the 
seller is forced to defend, reasoning that since common law indemnity is 
intended to hold harmless a party exposed to liability due to the wrongdoing of 
another, the statute too requires indemnity only if a manufacturer “was or would 
have been liable” in the underlying products liability action. ___ S.W.3d. at 
___. In reaching this conclusion, the Court disregards our interpretation of the 
statutory scheme in Fitzgerald and the text of the statute itself, which 
entitles the seller to indemnity “without regard” to the outcome of the suit. 
Tex. Civ. Prac. & Rem. Code § 
82.002(e)(1). I agree with the federal district court that “[t]he law 
requires that manufacturers pay regardless of how an action is concluded; that 
includes actions that are resolved before discovery can show a chain of 
distribution,” and that “[m]aking Owens prove that the manufacturers were in the 
chain of distribution would force the parties to litigate issues that are 
unnecessary under the statute.” Burden, 332 F. Supp. 2d at 1028; see 
also Ansell Healthcare Prods., Inc. v. Owens & Minor, Inc., 189 S.W.3d 
889, 895 (Tex. App.—Texarkana 2006, pet. filed). 
            
The Court erroneously concludes that this case is indistinguishable from 
General Motors Corp. v. Hudiburg Chevrolet, Inc., in which we held that 
the manufacturer of a component part not alleged to be defective in the 
plaintiff’s pleadings did not owe a duty to indemnify the distributor of the 
finished product. 199 S.W.3d at 257. In so holding, we relied on section 
82.002(f)’s requirement that a seller give notice to a manufacturer of “a 
product claimed in a petition or complaint to be defective.” Tex. Civ. Prac. & Rem. Code § 
82.002(f). Based on the statute’s language, we held that the key factor in 
deciding a manufacturer’s duty to indemnify the seller was whether the 
plaintiff’s pleadings claimed that the manufacturer’s product was defective. 
Hudiburg, 199 S.W.3d at 257. Seelin Medical, Inc. v. Invacare 
Corp. demonstrates how one court of appeals has followed Hudiburg. 
203 S.W.3d 867 (Tex. App.—Eastland 2006, pet. denied). In Seelin, the 
plaintiff’s original petition contained allegations that a component part of a 
product that was manufactured by Invacare was defective. The plaintiff later 
amended his petition to exclude claims regarding Invacare’s product. Id. at 868. 
Following Hudiburg, the court of appeals held that Invacare must 
indemnify the seller for defense costs incurred for the period of time during 
which the live petition contained allegations against Invacare’s product, but 
not for expenses incurred after the petition was amended. Id. at 871–72. 
While a manufacturer need not be a named defendant to trigger the indemnity 
obligation, a manufacturer is not obligated to indemnify a seller “for defending 
unproved claims that were never made” or, as in Seelin, were no longer 
present. Hudiburg, 199 S.W.3d at 257. I agree with the Seelin 
court that the statute limits the scope of a manufacturer’s indemnity 
liability to expenses incurred by the seller during the period of time the 
manufacturer’s product is implicated by the plaintiff’s live pleadings; any 
additional liability would violate the principal we established in 
Hudiburg. Id.
            
Here, the Court asserts “[t]here is no substantive difference between the 
position of the component-part manufacturer in Hudiburg and the position 
of Ansell and Becton in this case.” ___ S.W.3d at ___. To the contrary, unlike 
the component-part manufacturer in Hudiburg, Ansell and Becton were named 
as defendants in the underlying suit and their products were specifically 
alleged to be defective. This case fits squarely within the scope of liability 
we described in Hudiburg and that was applied in Seelin: “the 
claimant’s pleadings fairly allege[d] a defect in” Ansell’s and Becton’s 
products. Hudiburg, 199 S.W.3d at 257. In other words, Ansell and Becton 
are responsible for costs incurred by Owens & Minor only to the extent that 
their products are implicated by the plaintiff’s pleadings; if Burden had 
dropped her claims against their products, Ansell and Becton would not be liable 
for any costs incurred by Owens & Minor after that point because, like the 
manufacturer in Seelin, there would no longer be a live claim against 
them. 
            
Finally, our holding in Meritor Automotive, Inc. v. Ruan Leasing Co. 
supports the conclusion that a manufacturer must indemnify the seller for 
its defense of all allegations made against the seller, even if those 
allegations are not linked to a manufacturer’s particular product. 44 S.W.3d at 
89. In Meritor, we were asked whether a manufacturer must indemnify a 
seller for the seller’s defense of an unsuccessful negligence claim against the 
seller. Id. at 87. Again relying on the 
statute’s plain language, we held that a manufacturer must indemnify a seller 
for all claims in the products liability suit, including those alleging 
independent wrongdoing on the seller’s part. Id. at 90. We reasoned that, 
since section 82.002(a) states that a “manufacturer shall indemnify and hold 
harmless [a seller] against loss arising out of a products liability action,” 
and section 82.001(2) defines “products liability action” as “any action against 
a manufacturer or seller for recovery of damages arising out of personal injury, 
death, or property damage allegedly caused by a defective product,” the 
manufacturer’s duty to indemnify extended to “all direct allegations 
against the seller that relate to plaintiff’s injury as part of the ‘products 
liability action,’ and that we exclude only those losses proven to have 
been ‘caused by’ the seller.” Id. at 90 (emphasis added). 
            
Our decision in Meritor illustrates the breadth of the indemnity 
the Legislature afforded sellers under section 82.002. In holding that 
manufacturers must indemnify sellers who successfully defend claims based on the 
seller’s own negligence, we recognized that the indemnity obligation 
manufacturers bear extends even to claims unrelated to any wrongdoing by the 
manufacturer. The plain language of the statute and our prior cases compel the 
conclusion that section 82.002 requires a manufacturer to indemnify a seller for 
its entire defense unless the seller is found to be independently liable.
IV. Policy
            
The Court asserts various policy considerations to support its 
interpretation of the statute. Construing the statute to require manufacturers 
to indemnify or defend all claims against a seller in a products liability 
action, the Court posits, would lead to absurd results, as it would place one 
manufacturer in the untenable position of having to defend another 
manufacturer’s products. This might be impossible, the Court says, because the 
defense must be intimately familiar with the particular product in order to 
defend it, and a manufacturer might be forced to turn over proprietary 
information to a competitor in the course of the defense. 
            
First, the statute does not require that the manufacturer defend claims 
against the seller. The statute only uses the words “indemnify and hold 
harmless.” Tex. Civ. Prac. & Rem. 
Code § 82.002(a). While we have recognized that defending the seller 
fulfills the indemnity obligation, a manufacturer that considers the defense of 
another manufacturer’s product problematic yet necessary to the seller’s defense 
could presumably implead the culpable manufacturer. If joinder is not an option, 
the manufacturer could choose to defend only its own product and indemnify the 
seller for the rest, for which it would be entitled to seek contribution. Better 
yet, the manufacturers could all agree to cooperate in the seller’s defense, 
which the statutory scheme as I interpret it would seem to encourage. The 
federal district court’s analysis on this point is persuasive: 
 
Consider 
this hypothetical: A consumer sues seven drug stores knowing he bought from four 
or fewer and not knowing which of the defendants supplied him. He took a 
prescription drug manufactured by two companies, and the claim is product 
defect. In this case, the statute works to oblige the makers to defend and to 
pay the sellers’ modest costs, with the modesty of the costs depending on 
cooperation among the parties and judicial management. The gross costs will be 
much less if the makers step in the action promptly since no liability could 
independently attach to the sellers. 
 
 
Burden, 
332 F. Supp. 2d at 1028. 
            
Further, the concerns the Court voices about a manufacturer having to 
defend another manufacturer’s product are surely magnified for a seller who is 
forced to defend multiple manufacturers’ products in a products liability 
action. As the court of appeals in Ansell Healthcare recognized: 
 
The 
distributor is likewise in a poor position to attempt to defend the product 
manufactured by another. . . . The Legislature has elected to favor the innocent 
distributor over the manufacturers of allegedly defective products. The Texas 
Supreme Court has analyzed the statute in a light favorable to the innocent 
seller. Here, such an application results in requiring each manufacturer of an 
allegedly defective product sold by an innocent distributor to assume a full 
defense of the distributor or indemnify it from losses incurred.
 
 
189 S.W.3d at 
895. 
            
The Court bases an additional policy point upon a 1968 Utah case about 
right-of-way, positing that when there are two innocent parties one party should 
not be entitled to pass on its litigation expenses to the other. ___ S.W.3d. at 
___ (citing Bettilyon Constr. Co. v. State Rd. Comm’n, 437 P.2d 449, 
449–50 (Utah 1968)). However, by enacting section 82.002, the Legislature made 
the policy decision in products liability suits to require even innocent 
manufacturers to indemnify innocent sellers for their litigation costs. The role 
of this Court “is not to second-guess the policy choices that inform our 
statutes . . . ; rather, our task is to interpret these statutes in a manner 
that effectuates the Legislature’s intent.” McIntyre, 109 S.W.3d at 748. 
Here, the statute’s text indicates the Legislature’s intent to “hold harmless a 
seller” “without regard to the manner in which the action is concluded.” Tex. Civ. Prac. & Rem. Code § 
82.002(a), (e)(1). Requiring the seller to establish that a manufacturer was in 
the chain of distribution imposes a requirement that does not exist in the 
statute and contravenes the Legislature’s indemnity scheme. 
V. Conclusion
            
I would hold that section 82.002 obligated Ansell and Becton to indemnify 
Owens & Minor against all claims that Burden alleged, not just those related 
to their own products. Because the Court holds otherwise, I respectfully 
dissent.
 
            
______________________________________________________
            
Harriet O’Neill
            
Justice
 
OPINION DELIVERED: March 28, 2008