Opinion issued April 1, 2010
















     


In The
Court of Appeals
For The
First District of Texas




NO. 01-09-00399-CV




TOYOTA INDUSTRIAL EQUIPMENT MFG., INC., Appellant

V.

CARRUTH-DOGGETT, INC. D/B/A TOYOTALIFT OF HOUSTON,
Appellee




On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2006-78983A




OPINION

          Appellant Toyota Industrial Equipment Mfg., Inc. (TIEM) appeals the trial
court’s grant of summary judgment in favor of appellee Carruth-Doggett, Inc., d/b/a
ToyotaLift of Houston (ToyotaLift) on its statutory claim for indemnity for losses
arising out of a products liability suit. In two issues, TIEM argues that the trial court
erred in granting summary judgment because (1) TIEM did not owe a duty to
indemnify ToyotaLift for the separate negligence claim alleged against it; and (2) the
attorney’s fees awarded were not accrued in defending a products liability claim.
          We affirm.
Background
          In April 2005, Shahzah Sunesara was injured while operating a forklift
manufactured by TIEM and leased to his employer, International Rags, Ltd., by
ToyotaLift. He sued International Rags in 2006.


 On April 19, 2007, Sunesara filed
his first amended petition adding TIEM and ToyotaLift as defendants. The facts in
Sunesara’s petition alleged that 
International Rags instructed [him] to operate a forklift in order to
complete a task. The forklift is further identified as Model 7FGCU24,
Serial Number 75669 which was manufactured by TIEM and leased by
ToyotaLift. [Sunesara] was never instructed on how to operate the
forklift and/or never received any training on the safe operation of the
forklift. As [he] operated the forklift, it overturned and fell on [his] leg,
requiring amputation of his leg from the knee down.
 
Sunesara asserted that International Rags was negligent for failing to provide a safe
work place and to observe job site safety, failing to properly hire, supervise, and train
him to operate the forklift, “failing to warn [him] of the dangers that International
Rags knew or should have known [were] associated with the forklift,” providing
“machinery that was unsafe, unfit and/or malfunctioning,” and “failing to warn [him]
that its machinery was unsafe, unfit and/or malfunctioning.”
          Sunesara also alleged a strict products liability claim, stating, 
[Sunesara] would show that the forklift was placed in the stream of
commerce or otherwise distributed, sold or manufactured by ToyotaLift
and TIEM in a defective condition. [Sunesara] alleges that the forklift
in question was defective or otherwise unsafe at the time it left the
control of TIEM and ToyotaLift. The forklift was defectively
manufactured and/or designed and/or marketed by TIEM and
ToyotaLift. These defects rendered the forklift unreasonably dangerous
in that the forklift rolled over when it should not have rolled over and
such defect was a producing cause of damage to [Sunesara]. . . . The
forklift defects include but are not limited to the following:
 
          a.       Component parts were not present to prevent the forklift
. . . from rolling over;
 
          b.       There were no warning, instruction or advise [sic] to the
operators of the forklift to verify the component parts in
question were actually present;
 
          c.       Consumers were not properly warned of the possibility the
unit could unexpectedly roll over;
 
          d.       Defective assembly, reassembly or maintenance of the
Toyota forklift in question;
 
          e.       Improper testing, maintenance and/or inspection of the
Toyota forklift in question, or the component parts thereof
to determine the durability and function ability of the
purpose for which it was intended; and
 
          f.       Such other and further defects that discovery may reveal.
 
Sunesara’s first amended petition also alleged breach of implied warranty against
ToyotaLift and TIEM for “distributing the defective forklift in a defective and unsafe
condition,” arguing that “ToyotaLift and TIEM maintained and distributed the forklift
even though it was not suitable for the purposes for which it was intended.”
          Solely against ToyotaLift, Sunesara alleged negligence in the maintenance and
inspection of the forklift, arguing that “ToyotaLift assumed responsbility for the
proper operation of the forklift and agreed to maintain the forklift” pursuant to the
lease agreement between ToyotaLift and International Rags. Sunesara alleged
negligence against TIEM, stating that “the defects in the forklift were a direct result
of” TIEM’s negligence in designing, manufacturing, and marketing the forklift.
          On May 11, 2007, ToyotaLift answered the suit by denying Sunesara’s claims
and asserting various affirmative defenses, and it filed a cross-claim demanding
TIEM’s defense and indemnity under Chapter 82 of the Texas Civil Practice and
Remedies Code. On May 31, 2007, TIEM filed special exceptions, which, in regard
to the “products liability claims as to ToyotaLift,” stated,
TIEM specially excepts to . . . [Sunesara’s] First Amended Original
Petition in that it fails to fairly and accurately identify the claims for
which [Sunesara] is suing ToyotaLift. More specifically, TIEM
specially excepts that . . . [Sunesara] has not pleaded viable causes of
action against ToyotaLift pursuant to the Texas Civil Practice and
Remedies Code § 82.003 and TIEM requests that the Court require
[Sunesara] to amend his pleading to clarify his products liability claims,
if any, and to plead the required elements of a products liability claim
against ToyotaLift, if any there is.
 
ToyotaLift joined TIEM’s special exceptions.
          On November 7, 2007, Sunesara filed his second amended petition asserting
the same facts and negligence cause of action against International Rags.


 However,
he amended his claims for “Strict Product Liability” and “Breach of Implied
Warranty” to assert causes of action only against TIEM. Sunesara left unchanged the
cause of action solely against TIEM for negligence in designing, manufacturing, and
marketing the forklift and solely against ToyotaLift for negligence in maintaining and
inspecting the forklift. The entirety of Sunesara’s claims against ToyotaLift follow
Sunesara’s claims for products liability and negligence against TIEM and state:
          Plaintiff would show that Defendant ToyotaLift leased the forklift
in question to Defendant International Rags. Pursuant to the lease
agreement, Defendant ToyotaLift assumed responsibility for the proper
operation of the forklift and agreed to maintain the forklift. Defendant
ToyotaLift did not properly maintain the forklift, or alternatively,
Defendant ToyotaLift maintained the forklift in a negligent manner. 
ToyotaLift’s negligent acts and/or omissions regarding the maintenance
of the forklift, or lack thereof, proximately caused Plaintiff’s injury. 
Specifically, Defendant ToyotaLift maintained the forklift in question
and even inspected the forklift in question. ToyotaLift negligently
performed the maintenance, inspection, and prior or subsequent repairs
proximately causing harm to the Plaintiff.
          In addition, Plaintiff would show the Court that the occurrence
made the basis of this suit, and the resulting injuries and damages set out
below were a direct and proximate result of the negligence of ToyotaLift
in one or more of the following respects, or by combination thereof:
 
          a.       Failing to use due care in the maintenance and upkeep of
the Toyota forklift;
 
          b.       Failing to use or negligent use of due care to test and/or
inspect Toyota forklift or the component parts in question;
 
          c.       Failing to train its employees on the proper maintenance
procedures for the forklift in question; and
 
          d.       Such other and further defects and/or violations under
[Civil Practice and Remedies Code] § 82.003


 that
discovery may reveal.
 
          On January 7, 2008, ToyotaLift filed a no-evidence motion for summary
judgment against Sunesara, asserting that there was no evidence to support Sunesara’s
negligence claim against it and that, “[t]o the extent [Sunesara] seeks recovery against
ToyotaLift under a products liability theory, [he] has no evidence that he meets any
of the exceptions prohibiting this claim under Chapter 82 of the Texas Civil Practice
and Remedies Code.” Sunesara responded to ToyotaLift by arguing that it failed to
adequately inspect and maintain the forklift’s System of Active Stability, which was
a proximate cause of the forklift’s rolling over and injuring him. Regarding any
product liability claims, Sunsara’s response stated,
For the purposes of this motion and the evidence before the parties and
Court, [Sunesara] would concede that there is no cause of action against
ToyotaLift under [Chapter 82 of the Texas Civil Practice and Remedies
Code]. In fact, under the threat of special exceptions, [Sunesara]
amended his petition and laid out his causes of action against
ToyotaLift, none of which fell under § 82.001. . . . [Sunesara] did leave
open the possibility should evidence revealed through discovery present
an exception under § 82.003 in which ToyotaLift would be responsible. 
But because of the reasons previously stated and the fact that the
discovery is ongoing, [Sunesara] cannot point to evidence that
ToyotaLift is subject to any of the exceptions under § 82.003.
 
The trial court granted summary judgment and dismissed all of Sunesara’s claims
against ToyotaLift.
          On May 2, 2008, ToyotaLift filed its motion for summary judgment on its
cross-claim against TIEM for indemnity and recovery of attorney’s fees under
Chapter 82 of the Civil Practice and Remedies Code, and TIEM subsequently filed
its own motion for summary judgment and responded to ToyotaLift’s motion. The
trial court granted ToyotaLift partial summary judgment as to liability and denied
TIEM’s motion for summary judgment. On January 13, 2009, the trial court
conducted an evidentiary hearing to determine the amount of damages and attorney’s
fees for which TIEM was liable. On February 2, 2009, the trial court severed
ToyotaLift’s cross-claim and entered a final judgment awarding ToyotaLift $39,182
in attorney’s fees, $20,000 in conditional appellate attorney’s fees, and $2,596.93 in
expenses, post-judgment interest, and costs. TIEM appealed.
Analysis
          In its first issues, TIEM argues that the trial court erred in granting ToyotaLift’s
motion for summary judgment on the basis that TIEM was required to indemnify
ToyotaLift for expenses it incurred in defending itself in Sunesara’s suit because no
products liability claims were made against ToyotaLift. ToyotaLift argues that
Chapter 82 requires indemnity for products liability actions, not just for products
liability claims, and, therefore, the trial court did not err because Sunesara’s
negligence claim against ToyotaLift was part of a products liability action.
A.      Standard of Review
          We review a trial court’s grant or denial of summary judgment de novo. 
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). To
prevail on a traditional summary judgment motion, the movant has the burden of
proving that it is entitled to judgment as a matter of law and that there are no genuine
issues of material fact. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339,
341 (Tex. 1995). When both parties move for summary judgment and the trial court
grants one motion and denies the other, the reviewing court should review the
summary judgment evidence presented by both sides, determine all questions
presented and render the judgment that the trial court should have rendered. Tex.
Workers’ Comp. Comm’n v. Patient Advocates, 136 S.W.3d 643, 648 (Tex. 2004).
B.      Indemnification Under Chapter 82
          Under the common law, a manufacturer was not required to indemnify a seller
of its products “unless and until there was a judicial finding of negligence on the part
of the manufacturer.” Owens & Minor, Inc. v. Ansell Healthcare Prods. Inc., 251
S.W.3d 481, 483 (Tex. 2008) (citing Humana Hosp. Corp. v. Am. Med. Sys., Inc., 785
S.W.2d 144, 145 (Tex. 1990)). However, the legislature supplemented the common
law by enacting Section 82.002 of the Texas Civil Practice and Remedies Code,
which allows “an innocent seller to seek indemnification from the manufacturer of
an allegedly defective product.” Id. at 483–84.
          Section 82.002 of the Texas Civil Practice and Remedies Code provides:
(a)     A manufacturer shall indemnify and hold harmless a seller against
loss arising out of a products liability action, except for any loss
caused by the seller’s negligence, intentional misconduct, or other
act or omission, such as negligently modifying or altering the
product, for which the seller is independently liable.
 
(b)     For purposes of this section, “loss” includes court costs and other
reasonable expenses, reasonable attorney fees, and any reasonable
damages.
 
. . . .
 
(e)     The duty to indemnify under this section:
 
          (1) applies without regard to the manner in which the action is concluded; and
 
(2) is in addition to any duty to indemnify established by law,
contract, or otherwise.
 
(f)      A seller eligible for indemnification under this section shall give
reasonable notice to the manufacturer of a product claimed in a
petition or complaint to be defective, unless the manufacturer has
been served as a party or otherwise has actual notice of the action.
 
(g)     A seller is entitled to recover from the manufacturer court costs
and other reasonable expenses, reasonable attorney fees, and any
reasonable damages incurred by the seller to enforce the seller’s
right to indemnification under this section.
 
Tex. Civ. Prac. & Rem. Code Ann. § 82.002 (Vernon 2005).
Chapter 82 also defines “products liability action”:
“Products liability action” means any action against a manufacturer or
seller for recovery of damages . . . allegedly caused by a defective
product whether the action is based in strict tort liability, strict products
liability, negligence, misrepresentation, breach of express or implied
warranty, or any other theory or combination of theories.
 
Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2) (Vernon 2005).
          In Meritor Automotive, Inc. v. Ruan Leasing Company, the Texas Supreme
Court addressed the question of what constitutes a “products liability action” in terms
of a product manufacturer’s duty to indemnify an innocent seller. 44 S.W.3d 86, 88
(Tex. 2001). In Meritor, a truck driver was injured while attempting to open the hood
of his truck. Id. at 87. He filed a products liability suit against the manufacturers of
the truck and its hood and the leasing company that had leased the truck to his
employer. Id. The manufacturers agreed to indemnify the leasing company


 in
defending the suit. Id. Subsequently, the injured driver amended his pleadings to add
an allegation that the leasing company was independently negligent in failing to
maintain the hood, causing the leasing company to hire its own attorney and to file
a cross-claim against the manufacturers seeking indemnification for all damages and
expenses. Id. The driver settled his claims with the manufacturers and eventually
non-suited his claims against the leasing company, leaving only the leasing
company’s cross-claim for indemnification against the manufacturers. Id. 
          The manufacturers argued that they were not obligated to indemnify the leasing
company for its negligence defense because the negligence claim was not part of the
products liability action. Id. The leasing company argued that the negligence claim
was and remained a part of the products liability action because the negligence claim
was never established to be a cause of the truck driver’s injury. Id. The supreme
court held that the manufacturers were required to indemnify the leasing company for
the damages and expenses it accrued in defending its independent negligence claim. 
Id. at 90–91. Meritor emphasized that Section 82.002 requires a manufacturer to
indemnify the seller regardless of how the injury action is resolved and held that the
manufacturer’s duty begins when it is given notice that its product is alleged to be
defective in a plaintiff’s petition or complaint. Id. Meritor stated:
In describing the manufacturer’s duty, section 82.002(a) provides that
the manufacturer must indemnify the seller except when the loss is
“caused by the seller’s negligence [or other independent culpable
conduct].” Section 82.002(e)(1) then further elaborates on the
manufacturer’s duty to indemnify, stating that it “applies without regard
to the manner in which the action is concluded.” Thus, under (e)(1), it
is the manufacturer’s “duty to indemnify” that applies regardless of
outcome, and plaintiff’s pleadings are accordingly sufficient to invoke
that duty. But for the Manufacturers to implicate section 82.002(a)’s
exception to that duty, it must be established that seller’s conduct
“caused” the loss. In this instance, the statute’s plain language indicates
that the plaintiff’s pleadings are not sufficient to invoke the exception.
 
          Legislative history further confirms that the exception applies
only upon a finding that the seller was independently liable. The Senate
Bill Analysis explains that the Act’s purpose was to “expand the
indemnity rights sellers now have by requiring manufacturers to
indemnify them, regardless of the outcome of the suit, for all losses from
a products liability suit where the seller was not at fault.” The House
Bill Analysis likewise confirms that the Act requires manufacturers to
indemnify sellers for all costs incurred in a products liability action “as
long as the seller was not negligent or otherwise at fault.” This analysis
goes on to explain that under the exception, “Retailers would still be
held responsible if they were truly negligent, engaged in intentional
misconduct or altered a product.”
 
          In sum, a “products liability action” includes not only products
liability claims but also other theories of liability properly joined thereto,
such as the allegation of negligence in this case. And while the
manufacturer’s duty to indemnify the seller is invoked by the plaintiff’s
pleadings and joinder of the seller as defendant, the exception to that
duty is established by a finding that the seller’s independent conduct
was a cause of the plaintiff’s injury.
 
Id. at 91 (internal citation omitted). Thus, Meritor held that a negligence claim that
is properly joined to a products liability action is to be considered part of the products
liability action in terms of a manufacturer’s duty to indemnify an innocent seller, and
the manufacturer is required to indemnify the seller for any loss arising out of the
action except when there is a finding that the seller independently caused the loss. 
Id. at 87.
          The supreme court has reaffirmed that the manufacturer’s duty to indemnify is
triggered by the pleadings and not by proof of defect. See Owens & Minor, Inc. v.
Ansell Healthcare Prods., Inc., 251 S.W.3d 481, 485–86 (Tex. 2008) (holding that
manufacturer is only liable to indemnify seller for manufacturer’s own products and
stating, “[T]he pleadings must properly allege that the named defendant is a
manufacturer of the product under the statutory definition to establish a nexus
between the defendant manufacturer and the product, and thus trigger the protection
of the statute”); Gen. Motors Corp. v. Hudiburg Chevrolet, Inc., 199 S.W.3d 249,
256, 261 (Tex. 2006) (holding that manufacturer of component part not alleged by
plaintiff to be defective does not owe duty to indemnify seller).
          Here, we must determine whether this case, in which a products liability claim
against the manufacturer and a separate negligence claim against the seller were
joined to an ongoing negligence action against plaintiff’s employer, is subject to the
analysis set forth in Meritor. TIEM argues that Meritor is distinguishable from the
present case because Sunesara did not allege any products liability claims against
ToyotaLift, and, therefore, TIEM is not liable to indemnify it for the losses in
defending its separate negligence claim. In Meritor, the leasing company had
products liability claims made against it in addition to the separate negligence claim,
whereas here Sunesara amended his pleadings removing any products liability claims
against ToyotaLift, leaving only a claim against ToyotaLift for its own negligence. 
TIEM maintains that Sunesara’s pleadings were not sufficient to trigger the duty to
indemnify.



          ToyotaLift argues that Meritor does apply here. ToyotaLift was added as a
defendant to Sunesara’s suit as part of a products liability action, regardless of the
exact claims made against it. Thus, ToyotaLift argues that Sunesara’s negligence
claim against it is part of a products liability action. Furthermore, the trial court
granted ToyotaLift’s summary judgment denying Sunesara’s separate negligence
claim against it, and, therefore, the exception in the indemnity statute has not been
triggered because there has been no finding that ToyotaLift’s independent conduct
was a cause of Sunesara’s injury.
          While the situation here is not exactly analogous to that in Meritor, it is still
clear from Sunesara’s pleadings that the basis of his claims against TIEM was that the
forklift was defective and caused his injury. His second amended petition alleges
specific products liability claims against TIEM regarding specific defective
components, and it alleges that ToyotaLift was negligent in maintaining the forklift
and in “failing to use . . . due care to test and/or inspect [the] forklift or the component
parts in question.” Sunesara’s petition also states his intention to reassert products
liability claims against ToyotaLift if he discovered any basis for such claims. 
Because Sunesara alleges that a defect in the forklift manufactured by TIEM caused
him harm, his pleadings implicate the indemnity provision in Section 82.002 covering
“loss arising out of a products liability action.” See Tex. Civ. Prac. & Rem. Code
Ann. § 82.002(a); Meritor, 44 S.W.3d at 91 (holding that “a ‘products liability action’
includes not only products liability claims but also other theories of liability properly
joined thereto”). Thus, Sunesara’s pleadings triggered TIEM’s duty to indemnify
ToyotaLift,


 and those pleadings, as well as ToyotaLift’s cross-claim against TIEM,
put TIEM on notice of that duty. See Tex. Civ. Prac. & Rem. Code Ann. §
82.002(f); Meritor, 44 S.W.3d at 91. Furthermore, the exception listed in section
82.002 does not apply here because the trial court found that ToyotaLift was not
independently liable for Sunesara’s injury. See Meritor, 44 S.W.3d at 91; see also
Tex. Civ. Prac. & Rem. Code Ann. § 82.002(a). Thus, the trial court did not err in
granting summary judgment on this ground.
          We overrule TIEM’s first issue.
C.      “Loss” under Chapter 82
          In its second issue, TIEM argues that the trial court erred in awarding
attorney’s fees to ToyotaLift when the fees were not incurred in connection with the
defense of products liability claims. Specifically, TIEM argues that ToyotaLift did
not incur any “loss,” and thus is not entitled to pursue its claim for costs, expenses
and attorney’s fees. We have already determined that the negligence claim against
ToyotaLift was part of a products liability action, and therefore, ToyotaLift is entitled
to indemnity for the losses it incurred in defense of that claim as defined in the
statute. Section 82.002(b) specifically provides that loss “includes court costs and
other reasonable expenses, reasonable attorney fees, and any reasonable damages.” 
Tex. Civ. Prac. & Rem. Code Ann. § 82.002(b). ToyotaLift thus was entitled to
indemnification for its reasonable costs, expenses, and attorney fees. See id.
          TIEM also argues that the fees award was not reasonable because ToyotaLift
did not segregate fees which may be recoverable from those which are not and
because ToyotaLift played no role in the defense of the allegedly defective product. 
As we have already held, ToyotaLift was entitled to indemnity on all of its expenses
and fees, so segregation was not necessary. Furthermore, ToyotaLift did defend itself
against the separate negligence claim that we have already held was part of the
products liability action for which TIEM had a duty to indemnify.
          We overrule TIEM’s second issue.
Conclusion
          We affirm the judgment of the trial court.
 
 



                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Keyes, Sharp, and Massengale.