In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00306-CV
_____

**FAIRLAWN ASSETS, LLC, JOHN FERRANTE, AND JARROD FREEBORN, Appellants**

**V.**

**BARBARA BOOKER, AS GUARDIAN OF THE PERSON AND ESTATE OF M.H., Appellee**

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. B-202,429**

**MEMORANDUM OPINION**

This is an accelerated interlocutory appeal from the trial court's order denying appellants' motion to dismiss pursuant to the Texas Citizens Participation Act ("TCPA").[1] We affirm the trial court's judgment.

_____

[1]The Legislature amended the TCPA, effective September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11, 12, 2019 Tex. Gen. Laws 684, 687.

## BACKGROUND

Appellee Barbara Booker, the guardian of the person and estate of M.H., an incapacitated adult, sued appellants Fairlawn Assets, LLC ("Fairlawn"), John Ferrante, and Jarrod Freeborn, seeking to void a contract M.H. signed, in which M.H. sold to Fairlawn his right to receive annuity payments pursuant to a structured settlement agreement.[2] According to Booker's petition, M.H. has several mental health conditions, has never been able to manage finances or live independently, and has minimal reading skills, poor memory, impaired judgment, and is "extremely suggestible and easily led." Booker pleaded that Fairlawn "invoked and participated in the transaction" upon which her lawsuit is based, Ferrante is a member of Fairlawn, and Freeborn is an independent contractor that Fairlawn engaged to facilitate the transaction between Fairlawn and M.H. Booker asserted that Fairlawn was formed by one or more of the individual defendants "to effectuate the illicit exchange with M.H. with no intention to maintain Fairlawn Assets, LLC as a corporate entity conducting otherwise legitimate business."

---

The amendment only applies to suits filed after its effective date. *See id*. Therefore, because Booker's original petition was filed before September 1, 2019, the version of the TCPA that was in effect immediately prior to the 2019 amendment applies to this appeal. *See id*.

[2]Booker also sued other defendants who are not parties to this appeal.

2

Booker asserted that as a result of an injury M.H. sustained as a minor, M.H. received a settlement structured through an annuity issued by an insurance company. Booker pleaded that the periodic and lump sum payments provided by the annuity, together with Social Security disability benefits, Medicaid, and housing benefits, allowed M.H. to be financially self-sufficient. Booker alleged that M.H. was targeted by "one or more of the individual defendants . . . because his settlement was guaranteed by an annuity backed by an insurer with billions in assets and a high credit rating."

According to Booker, in February 2016, Fairlawn's attorney filed an application for approval of the transfer of M.H.'s structured settlement payment rights, and attached to Fairlawn's application was M.H.'s affidavit, which indicated that M.H. agreed to sell $216,000 in remaining annuity payments for $93,000. Booker pleaded that after deductions for discounted present value of the payments, "the net amount to be received by M.H. was 51.13% of current value." Booker alleged that Fairlawn, Ferrante, and Freeborn purposely misled the presiding judge into believing that M.H. had the mental capacity to knowingly enter into the contract. According to Booker, the trial judge ordered payment of $110,000 to M.H. rather than the $93,000 Fairlawn requested, but "even this amount was grossly unfair to M.H., given his lack of mental capacity and the consequence . . . that the transaction

3

. . . would permanently deprive M.H. of government benefits necessary to M.H.'s care." Booker pleaded that Fairlawn was dissolved in June 2016. Booker contended that, as a consequence of selling his annuity and receiving a lump sum payment, M.H. became ineligible for the Social Security disability and other government need-based benefits. Booker pleaded that she was appointed as M.H.'s guardian on April 18, 2018. Booker asserted causes of action for fraudulent misrepresentation, fraud and fraudulent inducement, fraud by non-disclosure, fraud in a real estate transaction, conspiracy, tortious interference with an existing contract and prospective contractual relations, alter ego, and restitution, and she sought to void the contract.

Fairlawn and Ferrante jointly filed a motion to dismiss pursuant to the TCPA, in which they argued that Booker's lawsuit had infringed upon its "protected right to petition and right of association[.]" Fairlawn and Ferrante asserted that Booker, as the non-movant, could not meet her burden of showing, by clear and specific evidence, a prima facie case for each essential element of her claims. In addition, Fairlawn and Ferrante contended that Booker could not overcome their limitations defense. Freeborn subsequently filed his own motion to dismiss pursuant to the TCPA, in which he made arguments identical to those that Fairlawn and Freeborn had made.

Booker filed a response to the defendants' TCPA motions to dismiss, in which she characterized defendants' claims as asserting that the suit "should be dismissed because the Defendants have a First Amendment right to deceive courts and the disabled." According to Booker, the motion to dismiss essentially claims that the TCPA immunizes appellants from Booker's lawsuit "because they were exercising their constitutional right to petition the court to gain approval of a transaction they fraudulently induced." Booker contended, among other things, that the TCPA does not apply to a legal action arising out of an insurance contract, and she maintained that M.H.'s annuity was issued by The Prudential Insurance Company of America ("Prudential"). According to Booker, Prudential is registered with the Texas Department of Insurance as a life, health, or accident insurer.

According to the settlement agreement reached in the personal injury lawsuit filed by M.H.'s mother, lump sum and future payments would be paid to M.H. Specifically, the agreement provided that M.H.'s mother would receive $20,710 upon execution of the agreement, and various monthly lump sum and monthly payments would be made to M.H. throughout his life. The terms of the agreement expressly permitted the insurer to make a qualified assignment of its liability to make the period payments required by the agreement to Prudential. The agreement also provided that the insurer and its assignee "reserve the right to fund their liability to

5

make periodic payments through the purchase of an annuity policy from The Prudential Insurance Company of America[,]" and the "[i]nsurer and/or the Assignee shall be the owner of the annuity policy, and shall have all rights of ownership." Also on file with the trial court were documents from the Texas Department of Insurance, which indicated that Prudential is a life, health, and accident company and is licensed to write accident, health, life, and annuity policies.

The record reflects that Fairlawn filed an application with the 58th District Court, seeking approval of a proposed transfer of M.H.'s structured settlement payment rights under the annuity. *See generally* Tex. Civ. Prac. & Rem. Code Ann. § 141.001-.007 (the Structured Settlement Protection Act). In its application, Fairlawn pleaded that M.H. was entitled to receive tax-free payments under a structured settlement arrangement and that M.H. agreed to transfer and assign those rights to Fairlawn. In its application, Fairlawn explained that the insurer purchased an annuity to fund its obligation to make the periodic payments due to M.H. under the settlement, identified the insurer as Prudential, and asserted that the proposed transfer was in M.H.'s best interest. With its application, Fairlawn provided a signed affidavit from M.H., as well as a copy of the assignment agreement. M.H.'s affidavit as well as the first paragraph of the assignment agreement both stated that M.H. was

6

due periodic payments pursuant to a settlement agreement, which provided for an annuity issued by Prudential to make the required payments.

The judge of the 58th District Court signed a final order approving the sale of M.H.'s partial annuity payments. In the order, the judge found that the proposed transfer complied with the requirements of the Structured Settlement Protection Act. *See generally id*. The judge's order stated that the insurers would not oppose transfer of the assigned payments to Fairlawn's designated assignee under the annuity contract, which was identified by number, and it required Prudential to make the assigned payments directly to Fairlawn's assignee. In addition, the record indicates that the Texas Department of Insurance licensed Prudential to write, among other things, variable annuities and "Variable Life[.]" In its responses to interrogatories, Fairlawn stated that "the only court-approved transfer of annuity payments in the State of Texas involved [M.H.]" and that Freeborn had discussed with M.H, the prospect of "selling his annuity payments in exchange for a lump sum payment[.]"

The trial court signed an order denying appellants' motions to dismiss, and appellants filed this appeal, in which they raise five issues for our consideration: (1) Fairlawn's motion was timely filed; (2) the structured settlement is not an insurance contract and Booker's legal action did not arise under an insurance contract; (3) the TCPA applies because Booker's lawsuit is based on, related to, or brought in

7

response to appellants' exercise of their right to petition and right of association; (4) Booker failed to establish a prima facie case for each essential element of her claims by clear and specific evidence; and (5) Booker's DTPA and tortious interference claims were filed outside the applicable two-year limitations period.

## ANALYSIS

As discussed above, appellants argue in issue two that M.H.'s structured settlement is not an insurance contract and Booker's legal action did not arise under an insurance contract. Because issue two is dispositive, we address it first. We review a trial court's ruling on a motion to dismiss under the TCPA, including the trial court's construction of the TCPA, under a *de novo* standard. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied). The purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem.

Code Ann. § 27.002;[3] *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017).

The TCPA permits a litigant to seek dismissal of a legal action that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association[.]" Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, sec. 27.003(a), 2011 Tex. Gen. Laws 960, 962. In determining whether the claim should be dismissed, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Act of May 1, 2011, 82nd Leg., R.S., ch. 341, § 2, sec. 27.006(a), 2011 Tex. Gen. Laws 960, 962. "Under [s]ection 27.006 of the Act, the trial court may consider pleadings as evidence." *Serafine v. Blunt*, 466 S.W.3d 352, 360 (Tex. App.—Austin 2015, no pet.) (op. on reh'g).

Section 27.010(d) of the TCPA provides that the TCPA does not apply to a legal action "arising out of an insurance contract[.]" Act of May 24, 2013, 83rd Leg., R.S., ch. 1042, § 3, sec. 27.010(d), 2013 Tex. Gen. Laws 2501, 2501 (current version at Tex. Civ. Prac. & Rem Code Ann. § 27.010(a)(4)).[4] The TCPA does not define

---

[3]We cite to the current version of section 27.002 because it was not affected by the 2019 amendments.

[4]Although the 2019 amendment did not change the applicable language, because the sections were amended and renumbered, we cite the pre-amendment version of section 27.010 for clarity. *See* Tex. Civ. Prac. & Rem. Code Ann. §

the terms "arising from" or "insurance contract." *See id*.; Act of May 21, 2011, 82nd Leg., R.S., ch. 341, §§ 1-4, 2011 Tex. Gen. Laws 960. To determine whether the TCPA applies, we must construe the phrase "arising out of an insurance contract[.]" In construing a statute, we must "determine and give effect to the Legislature's intent." *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). In determining the Legislature's intent, we do not confine our review to isolated words, phrases, or clauses, "but rather we examine the entire act to glean its meaning." *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001); *see also* Tex. Gov't Code Ann. § 311.011(a).

We must construe statutory language to ascertain and effectuate legislative intent, and we presume that the Legislature intends the plain meaning of its words. *Epco Holdings, Inc. v. Chicago Bridge & Iron Co.*, 352 S.W.3d 265, 269-70 (Tex. App.—Houston [14th Dist.] 2011, pet. dism'd). We presume that every word of a statute was used for a purpose and every omitted word was purposefully not chosen. *Id*. at 270. Words that are not defined in a statute are read in context and construed according to the rules of grammar and common usage. Tex. Gov't Code Ann. § 311.011(a). We presume that the Legislature enacted a statute "with complete

---

27.010(a)(4); Act of May 24, 2013, 83rd Leg., R.S., ch. 1042, § 3, sec. 27.010(d), 2013 Tex. Gen. Laws 2501, 2501 (both stating that the TCPA does not apply to a legal action "arising out of an insurance contract").

knowledge of the existing law and with reference to it." *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990).

The TCPA defines a "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, sec. 27.001(6), 2011 Tex. Gen. Laws 960. "'[A] cause of action' means the fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief." *Loaisiga v. Cerda*, 379 S.W.3d 248, 262 (Tex. 2012). "A 'cause of action' consists of the operative facts entitling the plaintiff to the relief sought." *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 604 (Tex. App.—San Antonio 2018, pet. denied).

To resolve issue two, we must construe the phrases "arising out of" and "insurance contract" as used in section 27.010(d) and then apply section 27.010(d) to the facts of this case. *See* Act of May 24, 2013, 83rd Leg., R.S., ch. 1042, § 3, sec. 27.010(d), 2013 Tex. Gen. Laws 2501, 2501 (current version at Tex. Civ. Prac. & Rem Code Ann. § 27.010(a)(4)). We find the opinion of our sister Court of Appeals in *Elkins* instructive. In *Elkins*, a dental practice hired a dentist (Elkins) for its practice and subsequently investigated Elkins for theft, reported Elkins to the police, and made an insurance claim based upon the purported theft. *Id.* at 602. Elkins

11

subsequently sued the practice for defamation, business disparagement, intentional infliction of emotional distress, and civil conspiracy. *Id*. The trial court denied the dental practice's motion to dismiss under the TCPA, and the dental practice appealed. *Id*. One of the issues before the *Elkins* court was whether the legal actions Elkins brought against the dental practice and the individual appellants fell within the insurance contract exemption set forth in section 27.010(d). *Id*. at 603. As the *Elkins* court noted, "[t]he insurance contract exemption in section 27.010(d) does not exempt legal actions 'seeking recovery for benefits under' an insurance contract[;]" rather, "the plain language of section 27.010(d) exempts legal actions 'arising out of' an insurance contract, regardless of whether the legal action is 'seeking recovery for benefits under' an insurance contract and regardless of whether the nature of the claim sounds in tort or in contract." *Id*. at 604. "The text of the TCPA as a whole demonstrates the Legislature knew how to use narrower qualifying phrases, and could have limited the insurance contract exemption to legal actions 'brought under' or 'based on' an insurance contract." *Id*.

As the *Elkins* court explained, the plain meaning of "'arise'" is "'[t]o originate; to stem (from)'" or "'[t]o result (from)[,]'" and the Texas Supreme Court has held that, in the context of construing insurance contracts, the term "'arise out of' means that there is simply 'a causal connection or relation,' which is interpreted

12

to mean that there is but for causation, though not necessarily direct or proximate causation." *Id*. at 605. The *Elkins* court concluded that although the TCPA does not define the term "insurance contract," "the plain meaning of the term undoubtedly includes an insurance policy or agreement that governs the legal rights of and relationship between an insurer and insured regarding insurance benefits." *Id*. at 606. When determining whether a legal action arises out of an insurance contract, we must consider not only the insurance contract, but other alleged facts involving the insurance contract. *Id*. According to the *Elkins* court, the term "arising out of" in the insurance contract exemption requires something more than the mere presence of an insurance contract or a cause of action merely having any relationship to an insurance contract[,]" but it requires less than a cause of action being based on, brought under, seeking benefits under, or seeking recovery for breach of an insurance contract. *Id*. The *Elkins* court held that "'arising out of an insurance contract'" required "that the insurance contract be a 'but-for' or motivating cause of the alleged facts entitling the plaintiff to relief, or that the alleged facts entitling the plaintiff to relief have a nexus to or originate in a contractual relationship between an insurer and an insured for insurance benefits." *Id*.

In the case *sub judice*, Fairlawn sought to acquire M.H.'s right to receive payments under the structured settlement agreement, which provided for the

purchase of an annuity to fund the obligation to M.H. To do so, Fairlawn applied to the 58th District Court for approval of the proposed transfer, as required by the Structured Settlement Protection Act ("SSPA"), and Fairlawn cited the SSPA in its application. *See generally* Tex. Civ. Prac. & Rem. Code Ann. § 141.001-.007. The SSPA defines an "[a]nnuity issuer" as "an *insurer* that has issued a contract to fund periodic payments under a structured settlement." Tex. Civ. Prac. & Rem. Code Ann. § 141.002(1) (emphasis added). In addition, the Texas Insurance Code provides that "an annuity contract is considered an insurance policy or contract if the annuity contract is issued: (1) by a life, health, or accident insurance company . . . ." Tex. Ins. Code Ann. § 1108.002(1). As discussed above, documents from the Texas Department of Insurance, which were filed with the trial court, indicate that the annuity issuer, Prudential, is a life, health, and accident company and is licensed to write accident, health, life, and annuity policies.

Giving the undefined terms in section 27.010(d) their plain meaning, presuming that the Legislature enacted the TCPA with complete knowledge of existing law and with reference to it, and following the analysis and interpretation of section 27.010(d) in *Elkins*, we conclude that Booker's causes of action "arise out of" an insurance contract. *See* Tex. Gov't Code Ann. § 311.011(a); *Acker*, 790 S.W.2d at 301; *Elkins*, 553 S.W.3d at 602-06; *Epco Holdings*, 352 S.W.3d at 269-

14

70. The payments to which M.H. was entitled were being made pursuant to an annuity contract, issued by an insurer, and the 58th District Court's order permitting the transfer from M.H. to Fairlawn under the SSPA identified the annuity contract by number. The annuity contract issued by Prudential is one of the operative facts upon which Booker's requested relief is based. *See Elkins*, 553 S.W.3d at 606. For all these reasons, we conclude that the TCPA does not apply to the Booker's claims against appellants. We overrule issue two. Having concluded that the TCPA does not apply, we need not consider appellants' remaining issues, which pertain to the merits of appellants' TCPA motion to dismiss and its timeliness. *See* Tex. R. App. P. 47.1. We affirm the trial court's order denying appellants' motion to dismiss.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on January 24, 2020
Opinion Delivered May 7, 2020

Before McKeithen, C.J., Kreger and Johnson, JJ.