ACCEPTED
03-15-00081-CV
4629267
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/24/2015 8:33:40 PM
JEFFREY D. KYLE
CLERK

# NO. 03-15-00081-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/24/2015 8:33:40 PM
JEFFREY D. KYLE
Clerk

**IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN, TEXAS**

**ACCESS ORTHODONTICS OF EAST 7TH STREET, P.A.,**
*Appellant*

**v.**

**MIRIAM JAIMES,**
*Appellee.*

**On Appeal from the 126th Judicial District Court
of Travis County, Texas
The Honorable Amy Clark Meachum Presiding**

### BRIEF OF APPELLEE MIRIAM JAIMES

J. Lynn Watson, *Lead Counsel*
Texas State Bar No. 20761510
THE J.L. WATSON LAW FIRM, P.C.
9442 N. Capital of Texas Hwy.
Arboretum Plaza 1, Suite 500
Austin, TX 78759
Telephone: (512) 343-4526
Telecopier: (512) 582-2953
email: lwatson@jlw-law.com

Collyn A. Peddie
Texas State Bar No. 15707300
LAW OFFICES OF COLLYN PEDDIE
440 Louisiana Street, Suite 900
Houston, Texas 77002-4205
Telephone: (713) 236-7783
Telecopier: (713) 236-7783
email: cp@collynpeddie.com

Counsel for Appellee Miriam Jaimes

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii
    CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii
    STATUTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv
    OTHER AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . v

COUNTER-STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

COUNTER-STATEMENT OF ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . vi

COUNTER-STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    I.    THE STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    II.    JAIMES' CLAIM IS NOT A "HEALTH CARE LIABILITY
        CLAIM" UNDER TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13)
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        A.    What Subsection 74.001(a)(13) Includes – and What It Does
            Not . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        B.    By Its Express Terms, Chapter 74 Does Not Apply to Claims
            that Do Not Sound in Negligence . . . . . . . . . . . . . . . . . . . . . 8
        C.    Jaimes Does not Assert a Claim Sounding in Negligence . . . 11
    III.    THE DTPA ENCOMPASSES JAIMES' CLAIMS . . . . . . . . . . . . . 20

CONCLUSION AND PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . 21

RULE 9.4(I) CERTIFICATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

## *CASES*

*Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12 (Tex. 1996) . . . . . . . . . . . . . . . . . . . 20

*Diversicare Gen. P'ship, Inc. v. Rubio*,
     185 S.W.3d 842 (Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12, 15, 16

*Froemming v. Perez*, No. 04-05-00514-CV, 2006 WL 704479
     (Tex. App.—San Antonio Mar. 22, 2006, no pet.) (mem. op.) . . . . . . . . . 19

*Gormley v. Stover*, 907 S.W.2d 448 (Tex.1995) . . . . . . . . . . . . . . . . . . . . . . 10, 14

*In re Labatt Food Serv., L.P.*, 279 S.W.3d 640 (Tex. 2009) . . . . . . . . . . . . . . . . . 6

*MacGregor Med. Assoc. v. Campbell*, 985 S.W.2d 38 (Tex.1998) . . . . . . . . . . . 10

*Meritor Automotive, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86 (Tex. 2001) . . . . . . 7

*Mills v. Pate*, 225 S.W.3d 277 (Tex. App.—El Paso 2006, no pet.) . . . . . . . . . . . 18

*Mulligan v. Beverly Enters.-Tex., Inc.*, 954 S.W.2d 881
     (Tex. App.– Houston [14th Dist.] 1997, no pet.) . . . . . . . . . . . . . . . . . . . 10

*Rio Grande Reg'l Hosp. v. Ayala*, 2012 Tex. App. LEXIS 7175
     (Tex. App. Corpus Christi Aug. 24, 2012, pet. filed) . . . . . . . . . . . . . . . . . 6

*Shaw v. BMW Healthcare, Inc.*, 100 S.W.3d 8
     (Tex. App.-Tyler 2002, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578 (Tex. 2000) . . . . . . . . . . . . . 7

*Stockton v. Offenbach*, 336 S.W.3d 610 (Tex. 2011) . . . . . . . . . . . . . . . . . . . . . . 5

*Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171 (Tex. 2012) . . . . . . . . . . 6

*TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432 (Tex. 2011). . . . . . . . 6

*Walden v. Jeffery*, 907 S.W.2d 446 (Tex.1995) . . . . . . . . . . . . . . . . . . . . 10, 13-15

*Wall v. Parkway Chevrolet, Inc.*, 176 S.W.3d 98, 104
     (Tex. App.—Houston [1st Dist.] 2004, no pet.) . . . . . . . . . . . . . . . . . . . . . 6

*Waters ex rel. Walton v. Del-Ky, Inc.*, 844 S.W.2d 250
     (Tex. App.-Dallas 1992, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATUTES

TEX. BUS. & COM. CODE ANN. § 17.41 (West 2002) . . . . . . . . . . . . . . . . . . . . . . 11

TEX. BUS. & COM. CODE ANN. § 17.46(b)(11) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TEX. BUS. & COM. CODE ANN. § 17.49 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13) . . . . . . . . . . . . . . 4, 5, 7-9, 11-13

TEX. CIV. PRAC. & REM. CODE § 74.004(a) . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13

TEX. CIV. PRAC. & REM. CODE § 74.051(a) . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 20

TEX. CIV. PRAC. & REM. CODE § 74.052(a) . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 20

TEX. CIV. PRAC. & REM. CODE § 74.351(a) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

TEX. CIV. PRAC. & REM. CODE § 74.351(b) . . . . . . . . . . . . . . . . . . . . . . . . . vi, 4

TEX. REV. CIV. STAT. ANN. art. 4590i, § 1.03(a) . . . . . . . . . . . . . . . . . . . . . . . 10

TEX. REV. CIV. STAT. ANN. art. 4590i, § 12.01(a) . . . . . . . . . . . . . . . . . . . . . . . 13

## OTHER AUTHORITIES

Ecke, Joseph R., *Medical Professionals and the DTPA*;
   State Bar of Texas Journal of Consumer and Commercial Law,
   Vol. 14, No. 3, Summer 2011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## STATEMENT REGARDING ORAL ARGUMENT

Appellant/Defendant's appeal is meritless. As a result, there is no need for oral argument. If, however, this Court does not agree and grants oral argument, Appellee/Plaintiff Jaimes would request the opportunity to present argument.

## COUNTER-STATEMENT OF THE CASE

Appellee/Plaintiff (hereinafter referred to as "Jaimes") objects to the statement of the case set forth in Appellant/Defendant's Brief because it contains pure argument, dressed up as facts and procedure, and attempts to mischaracterize Jaimes' claims as "health care liability claims" as defined by the Texas Medical Liability Act ("TMLA"). TEX. CIV. PRAC. & REM. CODE § 74.001, *et seq.*

A quick review of the pleadings in this case, *see* 1 CR 16-22, reveals that Jaimes asserts claims as a consumer under the Texas Deceptive Trade Practices. Period. Jaimes bought and paid for a product and services that she never received. She is not alleging negligence, medical malpractice, or any variation of a health care claim. As demonstrated below, Jaimes' claims against Appellant/Defendant are not and cannot be considered "health care liability claims." As a result, any expert report requirements ***applicable to claims she did not file*** do not apply here. The trial court's refusal to dismiss her claims was correct.

**COUNTER-STATEMENT OF ISSUE PRESENTED**

1.    Whether the trial court was correct in refusing to apply the expert report requirement applicable to "health care liability claims" under the TEX. CIV. PRAC. & REM. CODE § 74.351(b) to a claim, that involves no negligence or other "claimed departure from accepted standards" of care or services, brought by a consumer solely under the Texas Deceptive Trade Practices - Consumer Protection Act.

**COUNTER-STATEMENT OF FACTS**

Appellee/Plaintiff Miriam Jaimes (hereinafter referred to as "Jaimes") objects to the entirety of the purported Statement of Facts included in Appellant's Brief. Like its Statement of the Case, Appellant's Statement of Facts is pure argument and is highly misleading, so much so as to be useless to the court. For example, contrary to what Appellants would have this court believe, Jaimes has asserted claims for economic damages against Appellant/Defendant solely for violations of the Texas Deceptive Trade Practices - Consumer Protection Act ("DTPA"), nothing else.[1] For this and the reasons that follow, Jaimes provides this Counter-Statement.

The following facts are essentially undisputed: Appellant/Defendant – Access Orthodontics of East 7th Street, P.A. ("Access"), an orthodontics business which is a "professional association" organized under the laws of the State of Texas – offered to provide orthodontic services and goods of "full braces (upper and lower)," including "complete services," at the cost of $4,000.00 to Jaimes. (1 CR 18.) In making this offer, Access presented to Jaimes a document entitled "Payment Options," which summarized and confirmed the offer of such services at the cost of $4,000.00, and

---

[1] *See* Plaintiff's First Amended Original Petition (1 CR 16-22). Despite the "case type" description of "malpractice" stated in the court's record, presumably the result of information from Appellant/Defendant, Jaimes has not asserted against Appellant/Defendant any claims of medical or other professional malpractice, and Jaimes' claims against Appellant/Defendant are based wholly upon allegations that Appellant/Defendant violated the Texas Deceptive Trade Practices - Consumer Protection Act. *See Plaintiff's First Amended Original Petition* (1 CR 16-22).

furthermore, which described a payment schedule for same in the amount of $250.00 per month. (1 CR 18). Jaimes accepted Access' offer, and Jaimes immediately paid $1,000.00 as a down payment. *Id.* It is also undisputed that, thereafter, Jaimes timely made monthly payments in the amount of $250.00 each. *Id.* Indeed, Jaimes paid the full, agreed-upon cost for Access' services in a timely manner. *Id.* Jaimes's final payment was completed in January of 2012. (1 CR 18-19).

Despite having received the full, agreed-upon payment from Jaimes in a timely manner, Access failed to provide the services and goods which it contracted to deliver. (1 CR 19). Specifically, after wearing the braces for the prescribed time period, and after complying with all of Access' instructions regarding regular adjustments to the appliances (braces), Jaimes scheduled an appointment at Access' office for removal of her braces in November of 2012. (1 CR 19). Access canceled the appointment. *Id.* Despite Jaimes's multiple attempts to reschedule an appointment for the removal of her braces, a service for which she had already paid, Access canceled all proposed appointments and made excuses to avoid the removal of the braces. *Id.* Indeed, Access *never* delivered the services for which Jaimes had already paid. *Id.* It is undisputed that Access gave no medical reason to Jaimes for its failure to remove the braces. Jaimes was forced to save additional money, and wait until she could save

2

enough money, to pay a different orthodontist to have her braces removed by a different orthodontist.

After sending proper statutory notice and complying with all statutory conditions precedent, Jaimes sued Access under the Texas Deceptive Trade Practices - Consumer Protection Act, claiming in her petition that Access violated various provisions of that consumer protection statute, including (but not limited to) its dissemination of a statement known by Access to materially misrepresent the cost or character of a service for the purpose of inducing Jaimes to contract with regard to the service offered by Appellant. (1 CR 19-20.) Jaimes did not state in her petition any claims against Access for medical negligence, nor did Jaimes state in her petition any other kind of "health care liability claims." Instead, Jaimes' claims were based solely on Access' intentional and knowing refusal to perform the services for which it had been fully prepaid.[2]

Access answered Jaimes' lawsuit, stating that Jaimes' claims were somehow governed by Chapter 74 of the Texas Civil Practice & Remedies Code and that Jaimes had failed to provide Access with notice of suit and medical authorization as required by that statute. (1 CR 12-13). Thereafter, Access moved to dismiss Jaimes' claims

---

[2] (1 CR 16-22). Jaimes' original petition was filed on January 20, 2014, and Jaimes filed an amended petition on May 16, 2014, identical to the original petition filed on January 20, 2014 but for the addition of language compliant with Texas Rule of Civil Procedure 47.

on the ground that Jaimes had not provided written notice of claim and authorization pursuant to TEX. CIV. PRAC. & REM. CODE § 74.051(a) and TEX. CIV. PRAC. & REM. CODE § 74.052(a), nor had Jaimes filed an expert report pursuant to TEX. CIV. PRAC. & REM. CODE § 74.351(a) and (b). (1 CR 23-26).

Both parties appeared and presented argument at the hearing on Access' motion to dismiss. (1 RR 1-2). Counsel for Jaimes argued that the facts presented in Jaimes' petition did not meet the definition of a "health care liability claim" as set forth in Chapter 74 of the Texas Civil Practice and Remedies Code, and, therefore, Jaimes was not required by such statute to have provided an expert report because Jaimes' claims were not governed by that statute. (1 RR 10-12). The trial court agreed and denied Access' motion to dismiss. (1 CR 41). Access timely appealed. (1 CR 45-46.)

## SUMMARY OF ARGUMENT

Appellant seeks nothing less than a dramatic – and unwarranted – extension of TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13)'s expert report requirement to claims it was never intended to encompass, and special treatment and exemptions for businesses that provide any kind of good or services that may even remotely implicate one's health from the ordinary operation of Texas' consumer protection statutes. Nothing in Texas law authorizes either this court or the trial court to engage in such a radical rewrite of Texas law. For that reason and those that follow, the trial court's

4

order denying Access' Motion to Dismiss under TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13) was proper. Its decision should be affirmed.

Under no definition in Texas law can Jaimes' claim against Access be considered a "health care liability claim" because Jaimes has not asserted any claims even sounding negligence against Access, nor has Jaimes claimed any departure by Access from any accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care.

Jaimes is not required to provide an expert report[3] unless her claim is determined to be a "health care liability claim" under Chapter 74 of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). TEX. CIV. PRAC. & REM. CODE § 74.351(a) and (b). Because her claims are not encompassed by Chapter 74, the trial court was correct in denying Access' Motion to Dismiss. Its decision should be affirmed.

## ARGUMENT

## I.    THE STANDARDS OF REVIEW

A court of appeals reviews a decision to deny a motion to dismiss under Section 74.351 under an abuse of discretion standard. *See Stockton v. Offenbach*, 336 S.W.3d

---

[3] Furthermore, Jaimes was not required to give written notice of claim or authorization because her claim is not a "health care liability claim". TEX. CIV. PRAC. & REM. CODE § 74.051(a) and TEX. CIV. PRAC. & REM. CODE § 74.052(a).

5

610, 615 (Tex. 2011). The abuse of discretion standard imposes an especially onerous burden on Appellant here. A trial court may be found to have abused its discretion *only if* the record (1) clearly shows that the trial court misapplied the law to the established facts, (2) does not reasonably support the ruling, or (3) shows that the trial court acted arbitrarily or unreasonably.[4] Moreover, under that exceptionally high standard, the appellate court must defer to the trial court's *factual* determinations if they are supported by evidence but reviews only the trial court's legal determinations *de novo*. *Id.*; *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009).

In particular, whether a pleaded claim is actually a health care liability claim under Chapter 74 is a question of statutory construction reviewed *de novo*. *Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). As with all statutory construction, "in construing a statute, [the court's] aim is to determine and give effect to the Legislature's intent, and [it] begin[s] with the plain and common meaning of the statute's words." *Id*. Where a statute is unambiguous, "we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "*We further consider statutes as a whole rather than their isolated provisions*." *Id.*

---

[4] *See Rio Grande Reg'l Hosp. v. Ayala*, 2012 Tex. App. LEXIS 7175 (Tex. App. – Corpus Christi Aug. 24, 2012, pet. filed); *Wall v. Parkway Chevrolet, Inc.*, 176 S.W.3d 98, 104 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

6

at 439 (emphasis supplied). In interpreting a statute, "we presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose . . . ." *Id*. "When possible, each sentence, phrase, clause and word is given effect, so that the statute makes sense as a cohesive whole." *Meritor Automotive, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001). Thus, a court "do[es] not treat any statutory language as surplusage, if possible." *Spradlin v. Jim Walter Homes, Inc*., 34 S.W.3d 578, 580 (Tex. 2000). Access asks this court to violate all such principles of statutory construction here.

## II. JAIMES' CLAIM IS NOT A "HEALTH CARE LIABILITY CLAIM" UNDER TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13)

### A. What Subsection 74.001(a)(13) Includes – and What It Does Not

Contrary to the expansive interpretation Access asks this court to impose here, by its express terms, Chapter 74 of the Texas Civil Practice and Remedies Code (also known as the "Medical Liability Act") ***does not*** apply to all claims against all health care providers. Instead, it contains specific statutory limitations. Thus, the statute defines a "health care liability claim" to mean "a cause of action against a health care provider or physician for treatment, lack of treatment, or ***other claimed departure from accepted standards*** of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action

7

sounds in tort or contract."  TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13) (emphasis supplied).  By its own terms then, the statute applies only to claims sounding in negligence.  No such claim was brought here.

Instead of addressing the whole statute and these fatal limitations, in the trial court, Access took a single phrase from the statute – "lack of treatment"– pulled it out of context, and sought dismissal under Chapter 74 for James' alleged failure to comply with Chapter 74's expert report requirements.  Although Jaimes stipulated that Access itself is a "health care provider," that is where any connection to Chapter 74 ended. Recognizing that obvious fact, the trial court properly denied Access' Motion to Dismiss. This Court should affirm.

**B.     By Its Express Terms, Chapter 74 Does Not Apply to Claims that Do Not Sound in Negligence**

Access devotes a scant two pages in its brief to the real contested issue here: whether Jaimes has asserted any claim that sounds in negligence. She has not. That alone is fatal to Access' argument. Yet what Access omits in terms of analysis in those two pages, it more than makes up for in contradiction.  Indeed, its duplicity has fatally undercut its own argument.

Despite its quotation at page 8 of its brief reinforcing the notion that all of the words in a statute should have meaning, Access has simply taken the single phrase "lack of treatment" out of context and argued that that phrase, in a vacuum, means that

8

Chapter 74 applies to Jaimes' claims alleging that she did not get services for which she paid. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). It does not.

What Access conveniently ignores is ***the rest of the sentence in which that phrase is found.*** The term "lack of treatment" is immediately followed by ***"or other claimed departure from accepted standards*** of medical care, or health care, or safety or professional or administrative services directly related to health care." *Id.* This sentence has long been interpreted to mean that a "health care liability claim" under Chapter 74 must involve a "claimed departure from accepted standards" of care or services, that is, it must sound in negligence. Thus, in *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005), the Court explained with regard to an identical predecessor statute:[5]

---

[5] Before its codification in the Texas Civil Practices and Remedies Code, Chapter 74 was part of the Medical Liability and Insurance Improvement Act passed by the Texas Legislature in 1977 as Article 4590i of the Texas Revised Civil Statutes ("Article 4590i"). Ecke, Joseph R., *Medical Professionals and the DTPA*; STATE BAR OF TEXAS JOURNAL OF CONSUMER AND COMMERCIAL LAW, Vol. 14, No. 3 (Summer 2011). The language of Article 4590i section 1.03(a)(4) (defining "health care liability claim") was re-codified in the Civil Practice and Remedies Code without substantial modification. The Medical Liability and Insurance Improvement Act provided, in relevant part:

Sec. 1.03. (a) In this part:

[ * * * ]

(4) 'Health care liability claim' means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

9

A cause of action against a health care provider is a health care liability claim under the MLIIA if it is based on a claimed departure from an accepted standard of medical care, health care, or safety of the patient, whether the action sounds in tort or contract. A cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical services.[6]

Other provisions within Chapter 74 support this limited definition of "health care liability claim" as being one which involves a "claimed departure from accepted standards" of care or services, that is, a claim sounding in negligence. Indeed, *Access* cites one in its brief:    In its brief, Access asserts that "[t]he Act also specifically states that the DTPA does not apply to health care liability claims." Appellant's Brief at 9. TEX. CIV. PRAC. & REM. CODE § 74.004(a). A quick review of the relevant statute, however, reveals that Access is incorrect if not intentionally misleading in making that argument. Instead, TEX. CIV. PRAC. & REM. CODE § 74.004 bars *negligence* claims against health care providers under Sections 17.41-17.63 of the Texas Business and Commerce Code (hereinafter referred to as the "Texas Deceptive

---

Act of Aug. 29, 1977, 65th Leg., ch. 817, 1977 Tex. Gen. Laws 2039, *repealed by* Acts 2003, 78th Leg., ch. 204, § 10.01, eff. Sept. 1, 2003. Section 1.03(a), Medical Liability and Insurance Improvement Act, Tex. Rev. Civ. Stat. Ann. art. 4590i (Vernon Supp.1995).

[6]*Id., citing* TEX. REV. CIV. STAT. ANN. art. 4590i, §§ 1.03(a)(2), (4); *MacGregor Med. Assoc. v. Campbell*, 985 S.W.2d 38, 41 (Tex.1998); *Walden v. Jeffery*, 907 S.W.2d 446, 448 (Tex.1995); *Gormley v. Stover*, 907 S.W.2d 448, 449 (Tex.1995); *Mulligan v. Beverly Enters.-Tex., Inc.*, 954 S.W.2d 881, 884 (Tex. App.– Houston [14th Dist.] 1997, no pet.); *Waters ex rel. Walton v. Del-Ky, Inc.*, 844 S.W.2d 250, 258-59 (Tex. App.–Dallas 1992, no writ); *Shaw v. BMW Healthcare, Inc.*, 100 S.W.3d 8, 15 (Tex. App.– Tyler 2002, pet. denied).

10

Trade Practices - Consumer Protection Act" or the "DTPA")[7] involving personal injuries *but not other types of claims.* It provides:

> Sec. 74.004. EXCEPTION FROM CERTAIN LAWS.
>
> (a) Notwithstanding any other law, Sections 17.41-17.63, Business & Commerce Code, do not apply to physicians or health care providers with respect to claims for damages for *personal injury or death resulting*, or alleged to have resulted, *from negligence[8] on the part of any physician or health care provider*.

TEX. CIV. PRAC. & REM. CODE § 74.004(a). Subsection 74.004(a) then not only reinforces the conclusion that Chapter 74 and Subsection 74.001(a)(13) encompass only negligence claims, but it makes clear that the provision does not exclude Jaimes' claims here.

### C. Jaimes Does not Assert a Claim Sounding in Negligence

Without any analysis,[9] Access has simply ignored the requirement that any lack

---

[7] The Business and Commerce Code provision states:

> Sec. 17.41.      SHORT TITLE.  This subchapter may be cited as the Deceptive Trade Practices-Consumer Protection Act.

TEX. BUS. & COM. CODE ANN. § 17.41 (West 2002).

[8] "Negligence" is defined in the State Bar of Texas  2012 edition of Texas Pattern Jury Charges as: "Failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances."

[9] And it is too late for it to try to do so in its Reply brief when Jaimes will have no opportunity to respond.

of treatment represent a departure from acceptable standards of care, that is, that it involve some medical negligence. This court does not have that luxury. It must apply the proper test here: whether Jaimes' cause of action "alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical services." *See Diversicare,* 185 S.W.3d at 848. That test is not even arguably met here. As an initial matter, Access admits that "Jaimes' claim is essentially a breach of contract claim." Appellant's Brief at 9. It cannot now contradict that admission in is Reply Brief.

Moreover, there is nothing about agreeing to provide a service then refusing to do so for purely commercial and economic reasons that has anything to do with, let alone that is "inseparable" from, the rendition of medical services here. It is something any vendor could do. Indeed, to hold otherwise would be to construe the definition of "health care liability claim" in TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13) as any claim against a health care provider which involves any treatment or any lack of treatment – without consideration for whether such treatment or lack of treatment is a claimed departure from accepted standards of care. Such an expansive interpretation would result in the inclusion of all claims against health care providers, without exception, inasmuch as any claim against a health care provider could be construed as one involving treatment or the lack thereof.

12

Nothing about *Walden v. Jeffery*, 907 S.W.2d 446 (Tex.1995), which Access cites at page 8-9 of its brief, changes this conclusion. Access argues that the *Walden* court "held that claims arising from alleged misrepresentations related to dental work amount to a health care liability claim." Appellant's Brief at 8. It did not.

As an initial matter, the *Walden* opinion does not even purport to analyze whether or not the claims asserted by the *Walden* plaintiff constituted a "health care liability claim" as that term is defined by TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13), and the phrase "health care liability claim" is not found within that opinion. Instead, the opinion analyzed whether or not the plaintiff's claims involved claims of "negligence" under Section 12.01(a) [which was the precursor to the above-cited TEX. CIV. PRAC. & REM. CODE § 74.004(a)] to the old Medical Liability and Insurance Improvement Act. *Walden,* 907 S.W.2d at 448. That statute, like Ch. 74 today, specifically applied only to negligence claims.[10]

Moreover, Access admits in its brief that, "In *Walden*, the plaintiff sued her dentist for failing to provide dentures *that fit*, as he had promised." Appellant's Brief at 8-9 (emphasis added); *Walden,* 907 S.W.2d at 448. It is apparent even from Access' description of the facts underlying the *Walden* case that it is distinguishable

---

[10]*See* TEX. REV. CIV. STAT. ANN. art. 4590i, § 12.01(a) (Vernon Supp.1995) and *supra* note 7.

from this case because the *Walden* plaintiff complained of the "fit" of the dentures, which necessarily concerned an issue of the health care provider's negligence – *i.e.*, departure from accepted standards of medical care or health care, and the act or omission complained of was an inseparable part of the rendition of medical services. As the court in *Walden* explained:

> There can be no DTPA claim against a physician for damages for personal injury or death if the damages result, or are alleged to result, *from the physician's negligence*; *however, if the alleged DTPA claim is not based on the physician's breach of the accepted standard of medical care*, *section 12.01(a) does not preclude suit for violation of the DTPA. Thus, the underlying nature of the claim determines whether section 12.01(a) prevents suit for violation of the DTPA.* Claims that a physician or health care provider was negligent may not be recast as DTPA actions to avoid the standards set forth in the Medical Liability and Insurance Improvement Act.[11]
>
> In *Sorokolit*, a patient alleged that her physician represented that the result of breast augmentation surgery would look like a photo she selected. The Court held that this allegation did not necessarily involve the assertion that the physician had failed to meet the applicable standard of care and was therefore negligent. *In the present case, by contrast, the allegation that Walden provided ill-fitting dentures cannot be anything other than that he was negligent.* Jeffery has simply recast her negligence claim as a DTPA claim. Section 12.01(a), as construed in *Sorokolit*, precludes this. *Gormley v. Stover*, 907 S.W.2d 448 (Tex.1995) (per curiam).

*Walden,* 907 S.W.2d at 447-48 (emphasis added).

---

[11]907 S.W.2d at 447 (citing *Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex.1994)).

14

In the instant case, Jaimes does not complain of the health care provider's improper (negligent) removal of her braces, nor does she complain about the final result of the orthodontia treatment (*e.g.,* whether or not her teeth were properly straightened), because the braces removal for which Jaimes paid never occurred. Rather, Jaimes complains of Access' complete refusal for non-medical reasons to provide a pre-purchased service. Jaimes' allegations against Access include allegations that Access acted intentionally and knowingly. For these reasons, Jaimes' allegations against Access cannot possible be construed to constitute negligence or involve a claimed departure from the standards of care. Thus, there can be no argument that her claims fall within Chapter 74 even if the DTPA claim in *Walden* might have.

Although the appellate court in *Walden* did not consider directly the statutory definition of "health care liability claim", the analysis applied by the *Walden* court is consistent with the Texas Supreme Court's analysis of the "health care liability claim" definition as addressed in the *Diversicare* opinion, inasmuch as the facts contemplated in the *Walden* case would likely call for the "necessity of expert testimony from a medical or health care professional to prove a claim" – *i.e.,* an expert opinion concerning whether the troublesome "fit" of the dentures was indeed a departure from the accepted standard of care -- which the Texas Supreme Court recognized "may also

15

be an important factor in determining whether a cause of action is an inseparable part of the rendition of medical or health care services". *See Diversicare*, 185 S.W.3d at 848. In the instant case, there is no expert testimony from a medical or health care professional necessary to prove Jaimes' claim – *i.e.,* that her braces were not removed or that the braces should have been removed by Appellant/Defendant. Jaimes has not asserted a claim which calls into question the manner in which the braces were removed, nor does she complain about the final results of the orthodontic work; rather, she has asserted a claim that the braces were not removed even though she had paid for such service.

In the instant case, Jaimes has not asserted any claims based on negligence or departure from accepted standards of care, nor upon failure of professional skill or complaints about professional opinion;[12] rather, Jaimes' claims concern Appellant's

---

[12] The Texas Deceptive Trade Practices - Consumer Protection Act – the statute upon which Jaimes' claim is based – contains language which further clarifies that the DTPA is not applicable to medical negligence claims, inasmuch as the statute expressly does not apply to claims "based on the rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill". More specifically:

Sec. 17.49 (c) Nothing in this subchapter shall apply to a claim for damages based on the rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill. This exemption does not apply to:
(1)    an express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion;
(2)    a failure to disclose information in violation of Section 17.46(b)(24);
(3)    an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion;

deliberate and intentional failure to perform the orthodontic services for which she had fully paid. The dispute between Jaimes and Appellant/Defendant is grounded in Jaimes' pre-payment of $4,000.00 to Appellant/Defendant based on Appellant/Defendant's representation that Jaimes would receive "full braces (upper and lower)", including "complete services." Put another way: if Jaimes had not already prepaid for the removal of the braces, she would not have cause for complaint based on Access' failure to remove the braces.

To be sure, notwithstanding Chapter 74 of the Texas Civil Practice and Remedies Code and its predecessor statute (Section 4590i of the Medical Liability and Insurance Improvement Act), Texas courts have upheld the viability of claims against health care providers based upon misrepresentations, breach of warranty, and DTPA violations. For example, the El Paso Court of Appeals examined the common law claims of a plaintiff based on breach of an express warranty, against a physician who

---

(4) breach of an express warranty that cannot be characterized as advice, judgment, or opinion; or

(5) a violation of Section 17.46(b)(26).

TEX. BUS. & COM. CODE ANN. § 17.49 (c). Of course, Jaimes' claims do not constitute claims based on the providing of advice, judgment, opinion, or similar professional skill, but rather, the health care provider's failure to remove her braces, which was a service for which she had prepaid. 1 CR 16-22.

had represented that the plaintiff would experience particular results from liposuction surgery:

> Here, Ms. Mills presented more than a scintilla of probative evidence to support her common law claim for breach of an express warranty. The evidence from Ms. Mills' deposition testimony concerning Dr. Pate's remarks, the promised results, and injuries she suffered raises genuine issues of material fact as to each challenged element of Ms. Mills' breach of express warranty claim with respect to the first surgery, for which she paid Dr. Pate to perform. ***While Dr. Pate's representations about the quality or characteristics of the services he sold to Ms. Mills were, of course, related to their patient-client relationship, these representations are not inseparable from her negligence claims against him and consequently, they do not require a determination as to whether Dr. Pate failed to meet the accepted standard of medical care for cosmetic surgery. Thus, despite Dr. Pate's assertions, Ms. Mills' breach of warranty claim is not an improper attempt to recast her informed consent claim to avoid requirements of the Act. Rather, there is some evidence that Dr. Pate's particular representations were actionable as an express warranty claim in that his representations did not conform to the character and quality of the services promised, they formed the basis of the parties' bargain for the first surgery, and injury resulted to Ms. Mills.*** *See Southwestern Bell Tel. Co.v. FDP Corp.,* 811 S.W.2d 572, 576-77 & n. 3 (Tex.1991)(noting elements of a breach of warranty claim).

*Mills v. Pate*, 225 S.W.3d 277, 290 (Tex. App.—El Paso 2006, no pet.) (emphasis added). In the instant case, Access represented to Jaimes that it would provide "full braces (upper and lower)," including "complete services," to Jaimes, but failed to do so, even though Jaimes had paid in full for such services.

In a virtually identical case, the San Antonio Court of Appeals affirmed in part a decision allowing the DTPA claims of a mother who had pre-paid a portion of costs

18

associated with her daughter's braces before the dentist subsequently refused to complete the orthodontic treatment until further payment was received:

> Perez relied to her detriment on Froemming's representations regarding the cost of the braces. At the very least, Froemming clearly violated section 17.46(b)(11), which prohibits making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions. *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(11). By making special payment arrangements in the contract wherein Perez was obligated to pay $1,250, Froemming led her to believe that once that amount of money was paid, full orthodontic services would be provided to her daughter. Instead, after Perez paid approximately $1,550, Froemming suspended service until an additional payment of $1,344 was tendered. Melinda was left with brackets on her teeth that were not removed before her graduation or prom as anticipated and as discussed with Dr. Froemming. Furthermore, Melinda's teeth were left to revert to their pre-orthodontic condition, and she will have to once again begin treatment with a new orthodontist.

*Froemming v. Perez*, No. 04-05-00514-CV, 2006 WL 704479, *9, 14-16 (Tex. App.—San Antonio Mar. 22, 2006, no pet.) (mem. op.) (finding sufficient evidence of $7,000 in economic damages based on consumer's lay testimony of $3,500 paid to defendant orthodontist and estimated $3,500 to remedy defendant's DTPA violations; also, finding that orthodontist acted intentionally).

In the instant cause of action, Jaimes did not resort to "artful pleading" (as alleged by Appellant/Defendant at Appellant's Brief at 5) in her petition in bringing claims against Access under the Texas Deceptive Trade Practices - Consumer Protection Act.  Jaimes' claims are based on allegations of Access' knowing and

19

intentional – not negligent – conduct in violation of the Texas Deceptive Trade Practices - Consumer Protection Act. Jaimes' claims are based on Access' knowing and intentional inducement for Jaimes to prepay for full services associated with upper and lower braces, and Access' subsequent knowing and intentional failure to remove the braces for which Jaimes had fully pre-paid.

Because Jaimes' claims do not constitute a "health care liability claim," there was no requirement that Jaimes provide an expert report.,[13] For that reason, there was no basis for dismissal of Jaimes' claims. The trial court's denial of Access' Motion to Dismiss should be affirmed.

## III. THE DTPA ENCOMPASSES JAIMES' CLAIMS

Although not relevant to Appellant/Defendant's argument that Jaimes' claim is a "health care liability claim", Access has asserted that a "simple breach of contract claim does not give rise to liability under the DTPA," citing *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14-15 (Tex. 1996). Appellant's Brief at 9-10. However, as set forth in Jaimes' petition, Jaimes' claims are more than Appellant's simplistic presentation of "she entered into an agreement . . . that she performed by paying and . . . Access breached the agreement by failing to take off the braces." 1 CR 16-22;

---

[13] Furthermore, Jaimes was not required to give written notice of claim or authorization because her claim is not a "health care liability claim". TEX. CIV. PRAC. & REM. CODE § 74.051(a) and TEX. CIV. PRAC. & REM. CODE § 74.052(a).

20

Appellant's Brief at 9. Rather, Jaimes' claims are grounded in Access' knowing and intentional conduct in inducing Jaimes to pay $4,000.00 for full braces services, then subsequently knowingly and intentionally failing to remove the braces.

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons stated, Miriam Jaimes respectfully requests that the Court affirm the trial court's January 21, 2015 order and award her costs and such other relief as to which the Court may deem her entitled.

Respectfully submitted,

THE J.L. WATSON LAW FIRM, P.C.

By: _____
J. Lynn Watson
Texas State Bar No. 20761510

9442 N. Capital of Texas Hwy.
Plaza 1, Suite 500
Austin, TX 78759
Telephone: (512) 343-4526
Telecopier: (512) 582-2953
email: lwatson@jlw-law.com

Collyn A. Peddie
Texas State Bar No. 15707300
LAW OFFICES OF COLLYN PEDDIE
440 Louisiana Street, Suite 900
Houston, Texas 77002-4205
Telephone: (713) 236-7783
Telecopier: (713) 236-7783
email: cp@collynpeddie.com

*Counsel for Appellee*

21

## RULE 9.4(I) CERTIFICATE

In compliance with Texas Rules of Appellate Procedure 9.4(I), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(l), is 5,381, as calculated by the word processing program used by Appellee's counsel.

_____
J. Lynn Watson

## CERTIFICATE OF SERVICE

The undersigned certifies that this document has been served on the following counsel of record in compliance with Texas Rules of Civil Procedure and of Appellate Procedure on this 24th day of March, 2015.

Robert Anderton
State Bar No. 00795223
Mark J. Hanna
State Bar No. 08919500
900 Congress Avenue, Suite 250
Austin, TX 78701
Telephone: (512) 477-6200
Telecopier: (512) 477-1188
email: mhanna@markjhanna.com

Jon M. Smith
State Bar No. 18630750
3305 Northland Drive
Suite 500
Austin, TX 78731
Telephone: (512) 371-1006
Telecopier: (512) 476-6685
email: jon@jonmichaelsmith.com

_____
J. Lynn Watson

22